# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NOS. 03-11-00641-CV through 03-11-00643-CV
## NOS. 03-11-00742-CV through 03-11-00785-CV

### Vista Medical Center Hospital, Appellant

### v.

### Texas Mutual Insurance Company, Appellee

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
## HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING[1]

## O P I N I O N

In these appeals, we again consider the scope of the exclusive jurisdiction that the

Legislature has vested in the Texas Department of Insurance's Division of Workers' Compensation

---

[1] As detailed herein, the underlying causes were filed in multiple Travis County district courts but were ultimately decided in consolidated proceedings in the 261st judicial district court before Judge Yelenosky. The trial court cause numbers corresponding to appellate cause numbers 03-11-00641-CV through 03-11-00643-CV are: D-1-GN-08-002851, D-1-GN-07-004383, D-1-GN-07-004381, and for 03-11-00742-CV through 03-11-00785-CV: D-1-GN-08-002597, D-1-GN-08-000107, D-1-GN-08-002877, D-1-GN-08-002700, D-1-GN-08-001604, D-1-GN-08-002878, D-1-GN-08-001309, D-1-GN-08-002594, D-1-GN-07-003908, D-1-GN-08-001698, D-1-GN-07-004215, D-1-GN-07-003912, D-1-GN-07-004379, D-1-GN-08-001697, D-1-GN-08-000109, D-1-GN-08-000108, D-1-GN-08-002850, D-1-GN-07-004137, D-1-GN-08-000111, D-1-GN-08-001603, D-1-GN-08-001764, D-1-GN-07-004135, D-1-GN-08-000105, D-1-GN-08-002848, D-1-GN-08-002879, D-1-GN-08-000110, D-1-GN-08-001763, D-1-GN-08-000465, D-1-GN-07-004373, D-1-GN-08-002595, D-1-GN-08-001517, D-1-GN-07-004380, D-1-GN-08-001765, D-1-GN-08-002699, D-1-GN-08-001762, D-1-GN-07-004378, D-1-GN-08-000467, D-1-GN-08-002849, D-1-GN-08-002593, D-1-GN-08-002880, D-1-GN-08-000104, D-1-GN-08-000468, D-1-GN-08-000466, and D-1-GN-08-002876.

(the Division)[2] to initially determine certain disputes under the workers' compensation act.[3] The appeals emanate from 47 "medical-fee disputes" that each arose when appellee Texas Mutual Insurance Company paid appellant Vista Medical Center Hospital, L.L.P., less reimbursement than Vista contended it was owed for providing injured workers "medical benefits" under the act. Such disputes are within the Division's exclusive jurisdiction to initially determine,[4] and Vista accordingly initiated proceedings before that agency in an attempt to recover the additional reimbursement it claimed. The administrative proceedings culminated in final orders compelling Texas Mutual to pay Vista additional reimbursement on each of its claims. In response to each final administrative order, Texas Mutual paid the additional reimbursement as the order required, filed a suit for judicial review, and ultimately obtained a district court judgment reversing the order and remanding Vista's reimbursement claims to the Division. But within each judgment, and of central importance in these appeals, the district court also ordered Vista to pay back the additional reimbursement it had received from Texas Mutual under the now-invalidated administrative order.

---

[2] The Division has been vested with this jurisdiction and primary responsibility for administering the workers' compensation act since September 1, 2005, when it succeeded to the statutory responsibilities and rules of the former Texas Workers' Compensation Commission. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 265, §§ 8.001(b), .004(a), 2005 Tex. Gen. Laws 607, 608. Although some of the underlying events date back to the period in which the Commission was still in operation, we will use "the Division" to refer to both incarnations of the agency for clarity and because the distinction is immaterial to our analysis.

[3] *See, e.g.*, *Apollo Enters., Inc. v. ScripNet, Inc.*, 301 S.W.3d 848, 858–71 (Tex. App.—Austin 2009, no pet.); *Texas Mut. Ins. Co. v. Eckerd Corp.*, 162 S.W.3d 261, 263–67 (Tex. App.—Austin 2005, pet. denied); *Howell v. Texas Workers' Comp. Comm'n*, 143 S.W.3d 416, 428–29, 434–38 (Tex. App.—Austin 2004, pet. denied).

[4] *See Howell*, 143 S.W.3d at 434–38.

In its principal contention on appeal, Vista asserts that the district court lacked subject-matter jurisdiction to award this monetary relief unless and until there is a final administrative determination that Vista is not entitled to the additional reimbursement it seeks. We agree, and will reverse the district court's judgments and remand these causes.

## BACKGROUND

**Statutory context**

Because the parties' contentions on appeal arise from, and center on, the workers' compensation act's system of regulating medical reimbursement paid to health-care providers and resolving disputes about such payments, it is helpful to begin by noting some pertinent features of that system.

The workers' compensation act establishes a "comprehensive scheme whereby employees who are covered by workers' compensation insurance and incur 'compensable' injuries are provided the exclusive remedy of 'workers' compensation benefits,'" including "medical benefits" (i.e., "all health care reasonably required by the nature of the injury as and when needed"), to be paid by the insurance carrier that covers each worker. *Apollo Enters., Inc. v. ScripNet, Inc.*, 301 S.W.3d 848, 852, 860 (Tex. App.—Austin 2009, no pet.); *see* Tex. Lab. Code §§ 401.011(10), (31), 406.031, 408.001, 408.021.[5] In turn, the act "gives a health care provider who provides medical benefits . . . the right to reimbursement from the workers' compensation carrier that covers the employee." *Apollo*, 301 S.W.3d at 860; *see* Tex. Lab. Code § 408.027(a).

---

[5] In the absence of material intervening substantive changes, we will cite to the current versions of statutes for convenience.

To obtain such reimbursement, the act requires a health-care provider to submit a claim for payment to the appropriate workers' compensation insurance carrier not later than the 95th day after the date on which the health-care services were provided. *See* Tex. Lab. Code § 408.027(a). Applicable Division rules[6] further specify that the provider is to bill the carrier its usual and customary charges for the services. *See* 28 Tex. Admin. Code § 133.1(a)(3) (2005) (Tex. Dep't of Ins., Definitions);[7] *Texas Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 656 (Tex. 2004). In response, the act requires the carrier to take one or more of the following actions (termed "final actions" by the Division's rules) within 45 days after receipt of the bill: (1) make a payment on the charges, (2) deny one or more charges because, e.g., the health-care services are not covered by the workers' compensation insurance policy, or (3) determine to audit the "relationship of the health care services provided to the compensable injury, the extent of the injury, and the medical necessity of the services provided," in which case it must make partial payment of the charges pending the outcome of the audit. *See* Tex. Lab. Code § 408.027(b)–(c); 28 Tex. Admin. Code § 133.304(b) (2005) (Tex. Dep't Ins., Medical Payments and Denial); *see also* 28 Tex. Admin. Code § 133.301 (2005) (Tex. Dep't Ins., Retrospective Review of Medical Bills) (describing "retrospective review" of medical bills by carriers and noting that it may include examination for compliance with treatment guidelines established by the Division, duplicate billing,

---

[6] *See* Tex. Lab. Code § 402.061 (charging the Division with adopting rules as necessary for implementation and enforcement of the act).

[7] Unless otherwise indicated, we cite to the versions of Division rules that were in effect during the time frame relevant to the underlying medical-fee disputes. Each of the 47 medical-fee disputes at issue were in the dispute-resolution process between 2002 and 2005, and the relevant rules did not change materially during that time.

4

billing for treatment or services unrelated to the compensable injury, and provision of unnecessary or unreasonable services). The Division's applicable rules further provide that a carrier may also respond to a provider's bill by "requesting reimbursement for an overpayment" by the 45-day "final action" deadline. *See* 28 Tex. Admin. Code § 133.304(b). When making or denying payment on a bill, the carrier is required to generate an "explanation of benefits" (EOB) that "provide[s] sufficient explanation to allow the sender to understand the reason(s) for the insurance carrier's actions." *Id*. § 133.304(c); *see* Tex. Lab. Code § 408.027(e).

The act comprehensively regulates the amount of reimbursement that workers' compensation insurance carriers are to pay health-care providers and delegates expansive rulemaking powers to the Division for that purpose. These delegations include the power and duty to promulgate "fee guidelines" that are "fair and reasonable and designed to ensure the quality of medical care and to achieve effective medical cost control." *See* Tex. Lab. Code § 413.011–.012. Once adopted, such guidelines generally govern the amount of medical reimbursement that a carrier must pay and a health-care provider can receive for providing particular medical benefits. *See id.* § 408.027(f) (as general rule, "[a]ny payment made by an insurance carrier under this section shall be in accordance with the fee guidelines authorized under" the act); *see also* 28 Tex. Admin. Code §§ 133.1(8) (defining "fair and reasonable reimbursement" as the lesser of the provider's usual and customary charge and, in the absence of a contract rate, "the maximum allowable reimbursement, when one has been established in an applicable [Division] fee guideline"), 133.301(a)(1) (noting that retrospective review may examine provider bill for "compliance with the fee guidelines established by the [Division]"), 133.304(b)(1) (payment shall "make[] the total reimbursement for th[e] bill a fair and reasonable reimbursement in accordance with § 133.1(8) of this title"). In fact, the act requires that

5

if the Division "determines that an insurance carrier has paid medical charges that are inconsistent with the medical policies or fee guidelines," the Division "shall investigate the potential violation" and, if it turns out that the carrier reduced a charge that was within the guidelines, direct the carrier to submit the difference to the provider unless the reduction was authorized by contract. *See* Tex. Lab. Code § 413.016(b). Section 413.016 likewise mandates that "[t]he Division shall order a refund of charges paid to a health care provider in excess of those allowed by the medical policies or fee guidelines." *Id*. § 413.016(a).

In instances where a carrier denies or reduces payment on a provider's bill, the workers' compensation act entitles either the carrier or the provider to obtain administrative "review" of the claim before the Division, known as "medical dispute resolution." *See id*. §§ 408.027(e), 413.031(a)(1); *see also* 28 Tex. Admin. Code § 133.305 (2005) (Tex. Dep't Ins., Medical Dispute Resolution-General).[8] Medical dispute resolution is also available to providers who are "ordered by the [Division] to refund a payment received" and to carriers who have made refund requests of providers and been refused. *See* Tex. Lab. Code § 413.031(a)(3); 28 Tex. Admin. Code §§ 133.304(p), .305. In cases where the dispute is solely "over the amount of payment due for services determined to be medically necessary and appropriate for treatment of compensable injury" as opposed to disputes about, e.g., medical necessity, the Division "is to adjudicate the payment given the relevant statutory provisions and commission rules." Tex. Lab. Code § 413.031(c); *see* 28 Tex. Admin. Code §§ 133.305(a)(2), .307(a) (2005) (Tex. Dep't Ins., Medical Dispute Resolution

---

[8] The Division's applicable rules require the provider to first submit a request for reconsideration to the carrier. *See* 28 Tex. Admin. Code § 133.304(k)–(n) (2005) (Tex. Dep't Ins., Medical Payments and Denials).

of a Medical Fee Dispute); *Apollo*, 301 S.W.3d at 861. This category of medical disputes are known as "medical-fee" disputes. *See* 28 Tex. Admin. Code §§ 133.305(a)(2), .307(a); *Apollo*, 301 S.W.3d at 861. Procedurally, the Division determines medical-fee disputes on papers submitted by each party; it is not a contested-case proceeding. *See Patient Advocates*, 136 S.W.3d at 656. In addition to deciding the amount of reimbursement the carrier is obligated to pay under the act and Division rules and has either underpaid or overpaid, the Division is to award interest on that amount that begins accruing on the 60th day after the date the provider submits the bill to the carrier, in the case of an underpayment, or the 60th day after the date the provider receives notice of the "alleged overpayment" in the event of an overpayment. *See* Tex. Lab. Code § 413.019.

Although a carrier or provider may elect to pay in compliance with the Division's order in a medical-fee dispute, at relevant times the workers' compensation act has provided the aggrieved party a right to a de novo contested-case hearing on the reimbursement or refund claim, in the manner prescribed under the Administrative Procedure Act (APA),[9] before an administrative law judge (ALJ) of the State Office of Administrative Hearings (SOAH). *See* Tex. Lab. Code § 413.031(k).[10] Following the contested-case hearing (colloquially termed an "appeal"), the ALJ renders the final administrative order on the claim. *See id.* § 402.073(b). A party

---

[9] *See* Tex. Gov't Code §§ 2001.051–.014 (rights to and procedures for contested cases); *see generally id.* §§ 2001.001–.902 (provisions of APA).

[10] *Cf. Texas Mut. Ins. Co. v. Vista Cmty. Med. Ctr., LLP*, 275 S.W.3d 538, 543–46 & nn. 4 & 5 (Tex. App.—Austin 2008, pet. denied) (*Vista I*) (explaining that the Legislature repealed the right to a SOAH hearing in medical-fee disputes during a period between 2005 and 2007, thereby leaving the Division's order as the final administrative order subject to judicial review). Each of the medical-fee disputes at issue here were governed by a version of the act providing the right to the SOAH contested-case hearing.

that has exhausted these administrative remedies and is aggrieved by the final administrative order may then seek judicial review under the APA substantial-evidence standard in Travis County District Court. *See id.* § 413.027(k-1); Tex. Gov't Code §§ 2001.171, 2001.174–.176.

As with various other disputes that arise under the workers' compensation act, it is established that this statutory scheme impliedly delegates to the Division (and, in turn, SOAH) exclusive jurisdiction to determine the amount of medical reimbursement that is owed by a carrier to a health-care provider under the act and Division rules, subject to judicial review under the APA substantial-evidence standard. *See Patient Advocates*, 136 S.W.3d at 656–57; *Apollo*, 301 S.W.3d at 858–71; *Texas Mut. Ins. Co. v. Eckerd Corp.*, 162 S.W.3d 261, 263–67 (Tex. App.—Austin 2005, pet. denied); *Howell v. Texas Workers' Comp. Comm'n*, 143 S.W.3d 416, 434–38 (Tex. App.—Austin 2004, pet. denied).

**The stop-loss controversy**

The present medical-fee disputes and ensuing litigation originated from a larger controversy concerning a fee guideline that the Division promulgated in 1997 to govern the amount of medical reimbursement that workers' compensation carriers must pay for inpatient hospital admissions of covered workers. *See* 22 Tex. Reg. 6305 (1997) (originally codified at 28 Tex. Admin. Code § 134.401) (hereinafter "Former Rule 134.401" or "1997 hospital fee guideline").[11] The 1997 hospital fee guideline generally prescribes reimbursement according to a standard per-diem methodology based on specified categories of admissions. *See* Former Rule 134.401(c)(1)–(2).

---

[11] Former Rule 134.401 was repealed effective March 1, 2008, but remains in effect for hospital admissions that, like those at issue here, occurred before that effective date. *See* Tex. Reg. 5319 (July 4, 2008).

8

However, in the event of "an unusually costly or lengthy stay," the guideline provides an important exception or alternative to the per-diem rates, known as the "stop-loss exception" or "stop-loss method." *See* Former Rule 134.401(b)(1)(F)–(H), (c)(6). When applicable, the stop-loss exception requires the carrier to pay the hospital 75% of the hospital's total "audited" charges (defined as billed charges that remain after the carrier excludes charges for personal items, services that are not documented as having been provided, and services determined to be unrelated to the compensable injury) for the entire hospital stay. *See* Former Rule 134.401(c)(6). Application of the stop-loss exception tends to yield hospitals reimbursement for a given hospital admission that is substantially more generous—indeed, potentially several times larger—than the amounts prescribed under the standard per-diem methodology.

The 1997 hospital fee guideline states that a hospital's total audited charges from an admission must meet a "minimum stop-loss threshold" of $40,000 in order for the stop-loss exception to apply. *See* Former Rule 134.401(c)(6)(A). Various operators of hospitals, including Vista, interpreted the guideline to mean that their charges from an admission need only meet the $40,000 threshold in order to recover stop-loss reimbursement. In contrast, insurance carriers, including Texas Mutual, maintained that the guideline required providers not only to meet the $40,000 threshold, but also to demonstrate, through a case-by-case analysis, that the admission entailed "unusually costly and unusually extensive" services in order to qualify for stop-loss reimbursement. This underlying disagreement between hospitals and carriers regarding the proper construction of the stop-loss exception—what we will term the "threshold-only" versus

9

"threshold-plus" views, respectively[12]—gave rise to hundreds of medical-fee-dispute-resolution proceedings before the Division as Vista and other hospitals sought to recover stop-loss reimbursement essentially whenever total audited charges from an admission exceeded the $40,000 threshold and Texas Mutual and other carriers paid only per-diem rates absent proof of what they deemed "unusually costly and unusually extensive" services. The Division reached somewhat divergent results in these proceedings, and the losing party "appealed" many of the orders to SOAH for contested-case hearings.

In response to a torrent of such filings, SOAH consolidated many of the proceedings and assigned them to an en banc panel of ALJs to decide several common issues of construction under the 1997 hospital fee guideline. These issues included the threshold-only versus threshold-plus controversy regarding the stop-loss exception. In January 2007, the en banc panel issued a decision that, in relevant part, agreed with the hospitals' threshold-only view and held that such providers were required only to show that their total audited expenses from an admission met the $40,000 threshold in order to receive stop-loss reimbursement. Thereafter, ALJs began conducting contested-case hearings in the individual medical-fee disputes pending there and consistently rendered final orders awarding stop-loss reimbursement to providers based solely on

---

[12] This Court has previously described these divergent constructions of the stop-loss exception in terms of a "one-prong" test (i.e., merely satisfy the $40,000 threshold) versus a "two-prong" test (satisfy the $40,000 threshold + have "unusually costly and unusually extensive" services). *See Vista I*, 275 S.W.3d at 544–45. In this appeal, however, Vista has suggested that the "unusually costly and unusually extensive" services requirement actually imposes two "prongs" in addition to the $40,000 threshold "prong" so as to create a "three-pronged" test. To avoid unnecessary comment regarding the precise requirements for proving "unusually costly and unusually extensive" services, we have instead opted for the shorthand descriptions above.

findings that the total audited charges from the admission exceeded the $40,000 threshold. In many

of these cases, the carrier perfected suits for judicial review from the ALJ's final order.[13]

Large numbers of these administrative proceedings and ensuing suits for judicial

review pitted Vista against Texas Mutual. Those parties, along with several intervenors, eventually

presented the threshold-only versus threshold-plus controversy for judicial resolution through

competing declaratory claims under APA section 2001.038.[14] Although the hospital's threshold-only

view prevailed at the trial level, on appeal this Court agreed with the carriers' threshold-plus view.

We reversed and rendered judgment declaring that hospitals were required to show not only that

charges from an admission met the $40,000 stop-loss threshold, but also that "the admission

involved unusually costly and unusually extensive services to receive reimbursement under the

stop-loss method." *See Texas Mut. Ins. Co. v. Vista Cmty. Med. Ctr.*, LLP, 275 S.W.3d 538, 548–51

(Tex. App.—Austin 2008, pet. denied) (*Vista I*). The Texas Supreme Court denied review.

**The present litigation**

Among the medical-fee disputes emanating from the stop-loss controversy and pitting

Vista against Texas Mutual were the 47 that gave rise to the present appeals. Each arose when Vista

submitted a reimbursement claim to Texas Mutual, the carrier paid only per-diem reimbursement

on the claim (and issued an EOB reflecting that action), and Vista pursued medical-fee-dispute

---

[13] Likewise, in a number of similar medical-fee disputes that were adjudicated by the Division during the period in which the Legislature had repealed the "appeal" to SOAH, the aggrieved party perfected a suit for judicial review of the Division's final order in district court. *See Vista I*, 275 S.W.3d at 545 n.4.

[14] *See* Tex. Gov't Code § 2001.038(a)–(d) (providing that validity or applicability of agency rule may be determined in suit for declaratory judgment).

11

resolution before the Division to recover the full amount of stop-loss reimbursement to which it claimed entitlement. The Division issued an order in each proceeding—in some cases favoring Vista, in others Texas Mutual—and the losing party in each proceeding "appealed" the order to SOAH for a contested-case hearing. The 47 proceedings (like many similar ones) remained pending at SOAH until after the en banc panel's decision and the district court's subsequent judgment in *Vista I* favoring the hospitals. Following the district court's ruling, ALJs began conducting contested-case hearings in the pending medical-fee disputes. The ALJs disposed of these proceedings with largely parallel orders holding that "[t]he Stop-Loss Methodology applies to this case" and ordering Texas Mutual to pay Vista additional reimbursement accordingly, less the amounts Texas Mutual had already paid under the per diem rates, plus interest on the difference. *See* Tex. Lab. Code § 413.019(a) (providing interest on unpaid fees or charges). Underlying the ALJs' ultimate conclusion that the stop-loss exception applied were a series of legal conclusions that were incorporated from the SOAH en banc panel's decision. These included a conclusion adopting the threshold-only view of the stop-loss exception: "A hospital . . . establishes eligibility for applying the Stop-Loss Methodology . . . when total eligible charges exceed the Stop-Loss Threshold of $40,000 [and] [t]here is no additional requirement for a hospital to separately establish that any or all of the services were unusually costly or unusually extensive." The ALJ further made underlying fact findings regarding the amount of Vista's total audited charges from the admission, which in each instance exceeded the $40,000 stop-loss threshold. Consistent with its legal conclusions adopting the threshold-only view, the ALJ did not make findings as to whether the charges stemmed from "unusually costly and unusually extensive" services, *see State Banking Bd. v. Valley Nat'l Bank*, 604 S.W.2d 415, 419 (Tex. Civ. App.—Austin 1980, writ ref'd n.r.e.) (holding that APA does not

12

require findings on matter on which agency did not rely in support of its ultimate determinations), but instead found that the amount of Vista's charges alone "allows [Vista] to obtain reimbursement under the Division's Stop-Loss Methodology."

In response to each of the 47 final administrative orders, Texas Mutual paid the additional reimbursement as ordered and timely perfected a suit for judicial review. *See* Tex. Lab. Code § 413.031(k-1); Tex. Gov't Code § 2001.176(a)–(b); *see also id.* § 2001.176(b)(3) (providing that "the filing of the petition [for judicial review] vacates a state agency decision for which trial de novo is the manner of review authorized by law but does not affect the enforcement of an agency decision for which another manner of review is authorized"). When making each payment, Texas Mutual also issued a new EOB in which it emphasized its position, consistent with its threshold-plus view of the stop-loss exception, that it did not properly owe the payment to Vista and that it was "reserv[ing] all rights afforded it by law to recover this overpayment with interest." It subsequently sent Vista "negative" EOBs purporting to request "refunds" "for payments in excess of fee guidelines," further specifying that "the admission did not require unusually costly or unusually extensive services." Vista refused to return the payments. Texas Mutual did not attempt to seek remedies before the Division in response to Vista's refusal.

Texas Mutual's judicial-review claims were similarly founded on its threshold-plus view of the stop-loss exception. The carrier asserted that the ALJs' reliance on the threshold-only view in awarding Vista stop-loss reimbursement necessitated reversal of the orders and remand of Vista's claims to the Division for redetermination under a proper, threshold-plus, construction of the

13

exception. *See* Tex. Gov't Code § 2001.174(2).[15] Texas Mutual's position was eventually validated when, during the pendency of its suits, this Court decided *Vista I*, holding that the stop-loss exception required proof of both expenses exceeding the $40,000 threshold and "unusually costly and unusually extensive" services. *See Vista I*, 275 S.W.3d at 548–51.

Thereafter, Vista acknowledged that the administrative orders awarding it stop-loss reimbursement could not survive judicial review to the extent they rested solely on the legal conclusion that the stop-loss exception applied to all claims meeting the $40,000 threshold and did not additionally require proof of "unusually costly and unusually extensive" services. *See id*. at 550–51. However, Vista urged that the administrative records in 20 of the 47 cases established an alternative legal basis for applying the stop-loss exception there. Specifically, Vista maintained that Texas Mutual had waived its right to contest whether the hospital services at issue in those proceedings were "unusually costly and unusually extensive," which in Vista's view had the effect of conceding that the stop-loss exception applied by virtue of the ALJ's findings that the charges at issue met the $40,000 threshold. Based on that premise, Vista filed in each of these 20 cases a motion for summary judgment seeking to affirm the administrative order. Both

---

[15] Specifically, Texas Mutual sought reversal of each administrative order under the APA on the grounds that its substantial rights had been prejudiced by findings, conclusions, and decisions that were based upon an error of law (the ALJ relied on the threshold-only view of the stop-loss exception), made upon unlawful procedure (the ALJ did not require Vista to prove that its services were "unusually costly and unusually extensive"), not supported by substantial evidence (there was no evidence that Vista's services in the admission were "unusually costly and unusually extensive"), and arbitrary or capricious (the ALJ awarded Vista reimbursement under the stop-loss exception without considering relevant factors, whether Vista's services were "unusually costly and unusually extensive"). *See* Tex. Gov't Code § 2001.174(2)(C)–(F).

14

Texas Mutual and the Division, which was also a defendant, filed responses in opposition to Vista's summary-judgment motions.

However, as Texas Mutual observed in its briefing below, "the real fight" in the district court "[was] about refunds"—specifically whether Texas Mutual (1) could immediately recover in the district court's judgment the additional reimbursement it had paid Vista under the now-invalidated administrative orders, in essence returning the parties to their status quo before Vista had sought medical-fee-dispute resolution on its claims for stop-loss reimbursement, or (2) could recover the "overpayments" only if and after administrative proceedings on remand yielded a final determination that Vista was not entitled to the disputed funds under a correct, threshold-plus application of the stop-loss exception. In seeking an immediate "refund" of the disputed funds in the judgment, Texas Mutual relied on two basic theories of recovery. First, in addition to seeking reversal and remand of each administrative order under the APA, Texas Mutual contended that the APA empowered the district court also to "order [Vista] to refund to Texas Mutual" the additional reimbursement amount "Texas Mutual paid to [Vista] pursuant to the invalid SOAH order, plus interest." Alternatively, Texas Mutual asserted a claim for "refund" or recoupment of the additional reimbursement under an equitable money-had-and-received theory. In the further alternative, Texas Mutual sought declaratory judgments that the Division (or SOAH, in an "appeal" from the Division) had the authority and duty under Labor Code section 413.016(a) to order Vista to "refund" all funds paid by Texas Mutual pursuant to the invalidated administrative orders and that if the Division's rules precluded such relief, they were invalid and unconstitutional.[16] Moreover, in

---

[16] *See* Tex. Gov't Code § 2001.038 (providing that validity or applicability of a rule may be determined in suit for declaratory judgment); Tex. Civ. Prac. & Rem. Code §§ 37.001–.011

15

a final alternative, Texas Mutual sought a declaratory judgment that, if it "is unable to collect from Vista the overpayment made to Vista, whether because there is no legal mechanism for doing so or Vista is insolvent," it is entitled to collect the "overpayment," plus interest, from the subsequent injury fund.[17]

Texas Mutual filed in each case a brief on the merits of its APA judicial-review claims in which it emphasized its request for monetary relief under that statute. It combined with that brief a motion for summary judgment on its equitable money-had-and-received claim. Texas Mutual insisted that this "refund relief" was urgently necessary to protect the carrier's interests in the disputed funds during the interim before a final administrative determination of Vista's claims for stop-loss reimbursement. Texas Mutual emphasized filings by Vista's parent company, Dynacq Healthcare, Inc., before the U.S. Securities and Exchange Commission indicating that Dynacq was in the process of selling the Vista hospitals due to continued operating losses, that Dynacq classified the hospitals as "discontinued operation[s]," and that the company's continuing operations and business plans were focused exclusively on investments in China. Texas Mutual urged the district court that if it "does not order refunds now, in its judgments," there would be a substantial risk that any payments it made to Vista in excess of the amounts it properly owed "may become uncollectible, as Vista's parent company moves all operations and assets to China."

---

(provisions of the Uniform Declaratory Judgments Act) (UDJA). Texas Mutual also sought attorney's fees as the UDJA authorizes. *See* Tex. Civ. Prac. & Rem. Code § 37.009.

[17] The subsequent injury fund is a dedicated account in the general revenue fund used only for purposes specified by statute, including reimbursement to an insurance carrier for overpayment or benefits made under an interlocutory order of the Division. *See* Tex. Lab. Code § 403.006.

16

Vista filed responses in opposition to Texas Mutual's summary-judgment motions in which it objected to an affidavit the carrier had presented. But Vista's primary resistance to Texas Mutual's monetary claims came in the form of a plea to the jurisdiction it interposed in each case. Vista asserted that the district court lacked subject-matter jurisdiction over the claims because the Legislature had vested exclusive jurisdiction in the Division (and, in turn, SOAH) to determine carriers' entitlement to "refunds" of "overpayments" of medical reimbursement, subject to judicial review, and the relief Texas Mutual sought fell squarely within the scope of this delegation. In essence, Vista urged that Texas Mutual's monetary claims presented a type of medical-fee dispute.

In response to Vista's jurisdictional challenges, Texas Mutual acknowledged that the "ultimate" question of whether Vista was entitled to reimbursement under the stop-loss exception was within the Division's exclusive jurisdiction to determine on remand and that the agency "could order such refunds" at the conclusion of that process. Nonetheless, Texas Mutual insisted that its "refund" claims presented a conceptually distinct issue that lay beyond the Division's exclusive jurisdiction over medical-fee disputes—whether it or Vista should be entitled to hold the disputed stop-loss reimbursement amounts at the present time, pending determination of Vista's "ultimate" entitlement to stop-loss reimbursement. The Division echoed Texas Mutual in drawing "a sharp distinction 'between' a 'medical fee dispute' (which includes a determination of the ultimate amount due in the context of a refund demand) and a dispute as to the court's authority to award equitable recovery to [Texas Mutual] at this stage of the contested claims process." It posited that "if the court's exercise of its powers in equity does not involve a determination that there has been an 'overpayment' or determining [] the payment ultimately due for hospital services, then adjudication

17

of [Texas Mutual's] pending refund claims do not seem to compromise the Division's original jurisdiction to adjudicate medical fee disputes."

The 47 suits proceeded to a consolidated hearing on Texas Mutual's APA claims, the parties' summary-judgment motions, and Vista's pleas to the jurisdiction. Thereafter, the district court rendered the following judgments:

- In each of the 20 cases in which Vista had filed a motion for summary judgment seeking affirmance of the final administrative order, the district court denied the motion.

- In each of the 47 cases, the district court

  - rendered judgment reversing and remanding the administrative order to the Division for further proceedings consistent with *Vista I*;

  - denied Vista's plea to the jurisdiction;

  - overruled Vista's evidentiary objection, granted Texas Mutual's summary-judgment motion on its money-had-and-received claim, and rendered judgment awarding the carrier the additional reimbursement it had paid Vista under the now-invalidated administrative order, plus interest. The district court emphasized that "[t]his monetary award is without prejudice to the exclusive jurisdiction of [the Division] to determine on remand in proceedings consistent with *[Vista I]* the hospital fee dispute . . . and to order additional payments that may be due, if any, in accordance with the Texas Labor Code and applicable medical fee guidelines";

  - in light of these holdings, dismissed "the other actions pled by Plaintiff Texas Mutual" without prejudice; and

  - ordered that "[a]ll claims for relief not expressly addressed above are DENIED."

Vista paid the disputed funds into the court's registry and perfected appeals to this Court from each of the 47 judgments. On Vista's motion, we consolidated the appeals for purposes of briefing and argument.

18

**ANALYSIS**

Vista brings four issues on appeal. Its first, second, and fourth issues seek relief from the district court's judgment awarding Texas Mutual monetary relief under an equitable money-had-and-received theory. In its first issue, Vista urges that the district court erred in denying its pleas to the jurisdiction as to Texas Mutual's money-had-and-received claims. In its second issue, Vista argues that the district court abused its discretion in granting Texas Mutual's summary-judgment motions because it was an abuse of discretion to award relief under a money-had-and-received theory under the circumstances presented here. In its fourth issue, Vista complains that the district court abused its discretion in overruling its objection to Texas Mutual's summary-judgment evidence. In its remaining issue, its third, Vista asserts that the district court erred in denying its motions for summary judgment in the 20 cases in which it filed one.

In addition to responding to Vista's issues, Texas Mutual brings a cross-point urging that the district court possessed subject-matter jurisdiction to award the monetary relief under the APA, as the carrier had argued below, and that the judgment awards can be affirmed on that alternative theory. Vista disputes that Texas Mutual's cross-point sufficed to preserve this contention for appeal and suggests that the APA claims for monetary relief would fall within the Division's exclusive jurisdiction in any event.

The Division, as appellee, has also filed a brief joining with Texas Mutual in opposition to Vista's third issue addressing Vista's cross-motions for summary judgment. The Division takes no position with respect to Vista's remaining issues in the view that these concern equitable monetary claims that fall outside the Division's exclusive jurisdiction. But in the event this Court determines that the district court could not properly grant such relief without reaching

19

Vista's ultimate entitlement to stop-loss reimbursement, the Division conditionally asserts that the courts would lack jurisdiction to adjudicate those issues until administrative remedies are exhausted.

**Vista's motions for summary judgment**

Because Vista's third issue seeks summary judgments affirming some of the administrative orders, it logically precedes Vista's other appellate issues in the 20 cases to which it applies. Accordingly, we will address it first. We review the district court's summary- judgment rulings de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). Where, as here, both parties move for summary judgment and the district court grants one motion and denies the other, we review the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment that the district court should have rendered. *Patient Advocates*, 136 S.W.3d at 648. We must affirm the summary judgment if any of the grounds asserted in the motion are meritorious. *Id*.

In each of its motions for summary judgment, Vista asserted that the administrative order being challenged by Texas Mutual must be affirmed as a matter of law, notwithstanding the ALJ's reliance on the erroneous threshold-only view of the stop-loss exception, because substantial evidence in the administrative record (itself a question of law[18]) supports a theory that, in Vista's view, effectively rendered the ALJ's error harmless or immaterial. Specifically, Vista urged that

---

[18] *See Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (noting that whether there is substantial evidence to support an administrative decision is a question of law).

there was substantial evidence that Texas Mutual administratively waived its right to contest whether the hospital services were "unusually costly and unusually extensive." Vista has reasoned that this asserted waiver by Texas Mutual amounted to a concession that the hospital services were "unusually costly and unusually extensive," making the ALJ's unchallenged findings that the expenses met the $40,000 stop-loss threshold singularly sufficient to support the order even under a correct interpretation of the stop-loss exception.

In urging that the district court could disregard the ALJ's erroneous legal conclusions and findings predicated on the threshold-only view of the stop-loss exception, Vista invokes the longstanding principle—one that predates APA substantial-evidence review on the administrative record—that a reviewing court generally must affirm an administrative order "if it is correct on any theory of law applicable to the case," regardless of whether the agency purported to rely on that legal theory or even relied on an erroneous one. *See Gulf Land Co. v. Atlantic Ref. Co.*, 131 S.W.2d 73, 77 (Tex. 1939). However, as Vista acknowledges, this principle does not permit a reviewing court to affirm an administrative order on a *factual* theory on which the agency did not rely. *See id.* at 77–78; *Public Util. Comm'n v. Southwestern Bell Tel. Co.*, 960 S.W.2d 116, 121 n.7 (Tex. App.—Austin 1997, no pet.). And this limitation gives rise to a threshold difficulty with Vista's third issue: each administrative order is devoid of any fact findings or legal conclusions indicating that the ALJ relied on any factual theory of waiver, nor does any order contain the underlying findings that would be necessary to support such a theory under a substantial-evidence analysis.

The closest Vista can come to such support is to refer us to the following legal conclusion contained in each administrative order:

21

Pursuant to 28 TAC § 133.307(j)(2), any defense or reason for a denial of a claim not asserted by a carrier before a request for medical dispute resolution may not be considered at the hearing before SOAH, whether or not it arises out of an audit.

The cited rule, section 133.307(j)(2) of Texas Administrative Code title 28, limits the "defenses" or "denial reasons" that a carrier may raise in a medical-fee-dispute-resolution proceeding before the Division solely to those the carrier "presented to the requestor prior to the date the request for medical dispute resolution was filed with the [D]ivision and the other party." *See* 28 Tex. Admin. Code § 133.307(j)(2). Consequently, Vista is correct to suggest that rule 133.307(j)(2) is a rule that could conceivably give rise to a waiver of rights by a workers' compensation insurance carrier in a medical-fee-dispute-resolution proceeding before the Division. Furthermore, as Vista emphasizes, Texas Mutual did not challenge this legal conclusion in its judicial-review claim. But this legal conclusion, as Texas Mutual urges, does no more than state an abstract legal proposition relating to waiver—and there are no further findings or conclusions in the order purporting to apply rule 133.307(j)(2) to specific facts and actually find a waiver, nor any findings of the underlying facts (e.g., the defenses of denial reasons Texas Mutual did or did not raise, and when) that would be required to support such a finding or conclusion. *See Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 453 (Tex. 1984) (explaining that substantial-evidence review entails consideration of (1) whether agency made findings of underlying facts that logically support the ultimate facts and legal conclusions that are the ultimate basis for the order and, in turn, (2) whether the findings of underlying fact are reasonably supported by evidence).[19] Nor was the

---

[19] We also observe that the legal conclusion Vista cites is among the several that were incorporated into each order essentially verbatim from the SOAH en banc panel's order. Further, the legal conclusion Vista cites is immediately preceded by another conclusion from the en banc

22

district court allowed to infer or presume those facts. *See Morgan Drive Away, Inc. v. Railroad Comm'n*, 498 S.W.2d 147, 152 (Tex. 1973) ("We may consider only what was written by the [agency] in its order, and we must measure its statutory sufficiency by what it says," and "findings of basic [underlying] facts cannot be presumed from findings of a conclusional nature.").

There is, in short, no indication in the respective administrative orders that the ALJ relied on any finding or conclusion that Texas Mutual had waived rights in regard to reimbursement payments, and the district court was not permitted to supply that rationale to support each order. *See Gulf Land*, 131 S.W.2d at 77–78; *see also Yeary v. Board of Nurse Exam'rs*, 855 S.W.2d 236, 240–41(Tex. App.—Austin 1993, no writ) ("In our review, we are limited to the factual grounds the [agency] actually gave as the basis for its conclusion of law, although we may affirm the order on a legal ground not mentioned by the [agency] in its final order," and "[a]s to the factual grounds stated by the [agency] as the basis for its conclusion of law, . . . we must judge the validity of the [agency's] order 'by what it says.'") (citing *Gulf Land*, 131 S.W.2d at 84; *Morgan*, 498 S.W.2d at 152). And even if the legal conclusion Vista cites could be construed as an ultimate finding or conclusion adopting Vista's waiver theory, substantial evidence to support that finding would still be lacking because there are none of the underlying fact findings that would be necessary to

panel order stating that carriers' audit rights are not limited by the stop-loss exception's application. Read in context, the thrust of these two conclusions is to emphasize that while carriers may audit reimbursement claims that are subject to the stop-loss exception, any grounds for denying payment that are ultimately uncovered through the audit (a process that may delay a carrier's disposition of a reimbursement claim beyond the normal 45-day deadline for acting on a reimbursement claim, *see* Tex. Lab. Code § 408.027(a), (b)), nonetheless must be raised in accordance with rule 133.307(j)(2) in order to preserve them for purposes of medical dispute resolution. Vista has not suggested that the underlying medical-fee disputes have anything in particular to do with audits. This tends to further confirm that the ALJ's legal conclusion regarding rule 133.307(j)(2) does not reflect or support Vista's waiver theory as a basis for affirming the administrative order.

23

demonstrate a reasonable basis for that ultimate finding or conclusion. *See Charter Med.-Dallas*, 665 S.W.2d at 453.

Vista insists, however, that the absence of underlying fact findings supporting its waiver theory is immaterial because the administrative record establishes the necessary facts as a matter of law. *See Gulf Land*, 131 S.W.2d at 77–78 (stating that reviewing court could affirm administrative order based on alternative factual theory not addressed by the agency if the theory was established by conclusive evidence). Specifically, Vista argues that the EOB forms that Texas Mutual generated when initially processing the 20 reimbursement claims at issue failed to comply with the following Division rule applicable at the time:

> At the time an insurance carrier makes payment or denies payment on a medical bill, the insurance carrier shall send, in the form and manner prescribed by the [Division], the explanation of benefits to the appropriate parties. The explanation of benefits [EOB] shall include the correct payment exception codes required by the [Division's] instructions, and shall provide sufficient explanation to allow the sender to understand the reason(s) for the insurance carrier's actions. A generic statement that simply states a conclusion such as "not sufficiently documented" or other similar phrases with no further description of the reason for the reduction or denial does not satisfy the requirements of this section.

Former Rule 133.304(c). As Vista urges, the EOBs at issue are contained in the administrative record from each respective proceeding and their contents are uncontroverted. Vista reasons that the face of each EOB demonstrates that, as a matter of law, Texas Mutual failed to provide "sufficient explanation to allow [Vista] to understand the reason(s) for the insurance carrier's actions," as Former Rule 133.304(c) requires, with respect to Texas Mutual's contention that the hospital services at issue were not "unusually costly and unusually extensive." Leaving aside whether such

24

a determination could in itself supply the necessary factual underpinnings for Vista's waiver theory,[20] Vista fails to demonstrate that Texas Mutual's EOBs violated Former Rule 133.304(c).

Each EOB was printed on a Division-approved form and listed itemized charges that Vista had billed Texas Mutual in connection with a hospital admission. Beside each itemized charge was indicated Texas Mutual's payment on the charge, which in each instance was either zero or an amount reduced below the amount charged. Accompanying each charge and payment reference was indicated "exception code F." Vista's summary-judgment evidence established that the Division had adopted 22 "exception codes" and directed that exception code F—which the Division titled or described as "Fee guideline MAR [Maximum Allowable Reimbursement] reduction"—was to be used "when the [carrier] is reducing payment from the billed amount in accordance with the appropriate [Division] fee guideline's MAR . . . [and] NOT to be used for reductions based on lack of documentation or for charges for which [the Division] has not established an MAR." A complete listing or glossary of the 22 exception codes and their brief descriptions was also incorporated into the EOB form. Consequently, a reader of the form can discern that Texas Mutual's references to exception code F meant "Fee guideline MAR." Alongside each reference to exception code F in the itemized charges in the EOB was printed a "rationale" of "01," which was identified elsewhere in the document as: "01 THE CHARGE FOR THE PROCEDURE EXCEEDS THE AMOUNT INDICATED IN THE FEE SCHEDULE."

---

[20] We note, for example, that Vista relies on asserted violations of Former Rule 133.304(c) to show waiver under a different rule, rule 133.307(j)(2), yet the administrative orders contain no findings or conclusions explaining why or how the latter would follow from the former.

Although Vista does not appear to quarrel with whether "F" was the appropriate exception code for Texas Mutual to use under the circumstances here, *see* Former Rule 133.304(c), it urges that Texas Mutual's references to "Fee guideline MAR reduction" and "THE CHARGE FOR THE PROCEDURE EXCEEDS THE AMOUNT INDICATED IN THE FEE SCHEDULE" amounted only to the sort of "generic statement[s] that simply state a conclusion" that Former Rule 133.304(c) prohibits, and did not satisfy the rule's requirement of a "sufficient explanation to allow the sender to understand the reason(s) for the insurance carrier's actions." *See id.* Vista also contrasts these references with more specific explanations that Texas Mutual included in the "negative" EOBs it generated in connection with its refund requests,[21] suggesting this is tantamount to an admission by Texas Mutual that its earlier EOBs were deficient. However, the Division has adopted a construction of Former Rule 133.304(c)'s requirements that is less exacting than the standard Vista advocates, and we conclude that we should defer to it.

The Division refers us to several of its medical-fee dispute decisions involving stop-loss issues—some of which have involved Vista—that have addressed whether EOBs materially identical to Texas Mutual's here satisfy Former Rule 133.304(c)'s requirement. In these decisions, the Division uniformly held that EOBs citing explanation code "F" ("Fee Guideline MAR reduction") coupled with a reference to "fee schedules" or similar shorthand "support an explanation for the reduction of reimbursement" from the stop-loss amount to the per diem rates and

---

[21] In the negative EOBs, as previously noted, Texas Mutual elaborated that it was requesting a "refund . . . for payments in excess of fee guidelines because the admission did not require unusually extensive and costly services."

"provide sufficient explanation to allow the provider to understand the reason(s) for the insurance carrier's action(s)."[22]

The Division has requested that we take judicial notice of these administrative decisions. Vista has not objected. We will do so. *See Office of Pub. Util. Counsel v. Public Util. Comm'n*, 878 S.W.2d 598, 600 (Tex. 1994) (holding that court of appeals must take judicial notice of agency's published order if asked to do so) (citing Tex. R. Civ. Evid. 201(b)(2)); *Hendee v. Dewhurst*, 228 S.W.3d 354, 377 n.30 (Tex. App.—Austin 2007, pet. denied) (likening agency decisions to court decisions with regard to judicial notice). The Division has likewise urged us to give deference to its rule construction reflected in these decisions. Vista has not disputed that these decisions authoritatively represent the Division's construction of Former Rule 133.304(c) and are the sort of agency pronouncements regarding the construction of statutes and rules to which courts could potentially give deference. *Cf. Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006) (discussing analogous principles of judicial deference to agency statutory construction that apply to "formal opinions adopted after formal proceedings"). And assuming an authoritative agency interpretation like this, "[i]f there is vagueness, ambiguity, or room for policy interpretation in [the] statute or regulation," we normally defer to the agency's interpretation if it is "reasonable" and

---

[22] *See* Texas Dep't of Ins., Div. of Workers' Comp., *Vista Hosp. of Dallas v. Texas Mut. Ins. Co.*, M4-08-1759-01 (Sept. 17, 2012); Texas Dep't of Ins., Div. of Workers' Comp., *Vista Med. Ctr. Hosp. v. Lumbermens Mut. Cas. Co.*, M4-03-8005-01 (Aug. 23, 2012); Texas Dep't of Ins., Div. of Workers' Comp., *Vista Med. Ctr. Hosp. v. State Office of Risk Mgmt.*, M4-05-4763-01 (Aug. 14, 2012); Texas Dep't of Ins., Div. of Workers' Comp., *Vista Med. Ctr. Hosp. v. Commerce & Indus. Ins.*, M4-06-6004-01 (Aug. [sic] 2012); Texas Dep't of Ins., Div. of Workers' Comp., *Vista Hosp. of Dallas v. Zurich Am. Ins. Co.*, M4-09-3488-01 (June 22, 2012); Texas Dep't of Ins., Div. of Workers' Comp., *Vista Med. Ctr. Hosp. v. Facility Ins. Corp.*, M4-06-6080-01 (June 6, 2012).

not "plainly erroneous or inconsistent with the language of the statute, regulation, or rule." *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011).

We conclude that former Rule 133.304(c) is sufficiently vague, ambiguous, and open to policy interpretation with respect to the precise parameters of a "sufficient explanation to allow the sender to understand the reason(s) for the insurance carrier's actions," as distinguished from a "generic statement," that we should defer to the Division's construction of these terms if it is reasonable and not plainly erroneous or inconsistent with the rule's text. *See id.* We further conclude that the Division's construction is reasonable, not plainly erroneous, and not inconsistent with the rule's text, but is instead within the range of reasonable constructions permitted by that language. *See id*. Accordingly, we give deference to the Division's construction. *See id.*

Texas Mutual's EOBs plainly pass muster under the Division's construction of Former Rule 133.304(c). Again, Texas Mutual's EOBs are materially identical to those addressed in the administrative decisions to which the Division refers us. Consequently, the Texas Mutual EOBs that Vista cites as conclusive proof of its waiver theory instead only further demonstrate the absence of substantial evidence to support it. *See* Tex. Gov't Code § 2001.174(2); *Charter Med.-Dallas*, 665 S.W.2d at 453.

Absent administrative findings, conclusions, and substantial evidence to support Vista's waiver theory, the district court did not err in denying Vista's motions for summary judgment. We overrule Vista's third issue.

**Vista's challenges to monetary relief**

Having overruled Vista's sole issue that would support affirming any of the administrative orders, we now turn to Vista's issues challenging the monetary relief the district court

28

awarded upon reversing those orders. Vista's principal contention, advanced chiefly within its first issue, is that the district court lacked subject-matter jurisdiction to award the monetary relief because it amounted to the sort of "refund" of an "overpayment" of medical reimbursement to which the Division (and, in turn, SOAH) have been vested with exclusive jurisdiction to determine entitlement, subject to judicial review. Because Vista's arguments and Texas Mutual's responses are grounded in the principles that govern analysis of administrative-agency jurisdiction, and that of the Division in particular, it is helpful to first summarize those principles before turning to the parties' specific assertions regarding them.

Our "analytical starting point" with such issues is Article V, section 8 of the Texas Constitution, which provides that a district court's jurisdiction "consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." Tex. Const. art. V, § 8; *see Apollo*, 301 S.W.3d at 859. The Legislature has generally conferred on district courts "the jurisdiction provided by Article V, Section 8, of the Texas Constitution" and jurisdiction to "hear and determine any cause that is cognizable by courts of law or equity and . . . grant any relief that could be granted by either courts of law or equity." Tex. Gov't Code §§ 24.007–.008. Consequently, "[c]ourts of general jurisdiction presumably have subject matter jurisdiction unless a contrary showing is made." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002); *see Apollo*, 301 S.W.3d at 859.

In contrast, "there is no presumption that administrative agencies are authorized to resolve disputes. Rather, they may exercise only those powers the law, in clear and express statutory

29

language, confers upon them." *Subaru*, 84 S.W.3d at 220. "Courts will not imply additional authority to agencies, nor may agencies create for themselves any excess powers." *Id.* The courts are not divested by an agency of the subject-matter jurisdiction they would otherwise possess to adjudicate a cause except if and to the extent the Legislature has granted the agency exclusive jurisdiction, or the sole power to make an initial determination of a claim or issue. *See id.* at 221; *Apollo*, 301 S.W.3d at 859. Whether the Legislature has done so is determined by examination and construction of the relevant statutory scheme, and is thus a question of law that we review de novo. *See Thomas v. Long*, 207 S.W.3d 334, 340 (Tex. 2006) (citing *Subaru*, 84 S.W.3d at 221); *Apollo*, 301 S.W.3d at 859.[23] We look to whether the Legislature has enacted express statutory language indicating that the agency has exclusive jurisdiction, or if not, whether a "pervasive regulatory scheme" nonetheless reflects legislative intent that an agency have the sole power to make the initial determination in the dispute. *See Thomas*, 207 S.W.3d at 340 (citing *Subaru*, 84 S.W.3d at 223); *Apollo*, 301 S.W.3d at 859. Moreover, "because 'abrogating common-law claims is disfavored' in light of open courts implications, we are not to construe a statute creating an administrative remedy to deprive a person of an established common-law remedy unless the statute 'clearly or plainly' reflects the [L]egislature's intent to supplant the common-law remedy with the statutory

---

[23] Our primary objective in statutory construction is to give effect to the Legislature's intent. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). "Where text is clear, text is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g) (citing *Shumake*, 199 S.W.3d at 284; *Alex Sheshunoff Mgmt. Servs. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex. 2006)). We give such statutes their plain meaning without resort to rules of construction or extrinsic aids. *Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635, 637 (Tex. 2010).

one." *Apollo*, 301 S.W.3d at 859–60 (quoting *Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 15–17 (Tex. 2000)).

As previously noted, and as all parties acknowledge, the Legislature has impliedly delegated exclusive jurisdiction to the Division (and, in turn, SOAH) to determine, subject to judicial review, medical-fee disputes—i.e., "disputes over the amount of payment due for services determined to be medically necessary and appropriate for treatment of a compensable injury" that must be paid by workers' compensation insurance carriers to reimburse health-care providers for "medical benefits" provided to injured workers. *See* Tex. Lab. Code §§ 408.027, 413.031(a), (c); *Apollo*, 301 S.W.3d at 858–71; *Eckerd*, 162 S.W.3d at 263–67; *Howell*, 143 S.W.3d at 435–36. This jurisdiction has been held to be implicated by any claim, even if couched in common-law or equitable theories of recovery, through which a health-care provider seeks relief predicated on an asserted entitlement to medical reimbursement under the workers' compensation act and Division rules. *See Howell*, 143 S.W.3d at 438. In essence, this holding is an application of the rationale underlying the Texas Supreme Court's *Fodge* decision, which held that common-law claims by injured workers that would have the effect of establishing a right to workers' compensation benefits implicate the Division's exclusive jurisdiction to award such benefits, and thus cannot be litigated unless and until those administrative remedies are first exhausted. *See American Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801, 803 (Tex. 2001).

In *Apollo*, we held that this jurisdiction was similarly implicated by tort claims asserted against a benefits management company (an entity that assists carriers in processing and paying reimbursement claims) by an assignee of a health-care provider's reimbursement rights, to the extent the claims required determination of the amount of reimbursement that was properly owed

31

by the carrier to the provider under the act and Division rules. *See Apollo*, 301 S.W.3d at 862–71. And in *Eckerd*, we held that the Division's exclusive jurisdiction over medical-fee disputes was likewise implicated by a workers' compensation carrier's claims seeking to recover "overpayments" of reimbursement to a provider beyond the amounts the carrier is obligated to pay under the workers' compensation act and rules. *See Eckerd*, 162 S.W.3d at 263–67. The specific claims we addressed in *Eckerd*, it so happens, were asserted by Texas Mutual, and sought to recover alleged past "overpayments" under legal theories that included money had and received, one of the same theories of recovery on which Texas Mutual relies here. *See id.*

In concluding that the Legislature intended for the Division's medical-fee dispute-resolution processes to serve as the sole means of obtaining the determination—necessary for recovery in each of these cases—as to the proper amount of reimbursement the carrier owed the provider under the act and Division rules, we cited three basic features of the workers' compensation act. First, we emphasized that a health-care provider's entitlement to any particular amount of reimbursement payment and a carrier's corresponding obligation to pay that amount derive from the workers' compensation act rather than the common law. *See Apollo*, 301 S.W.3d at 866–67; *Eckerd*, 162 S.W.3d at 266; *cf. Cash Am.*, 35 S.W.3d at 15–17. Second, we noted the "pervasive" and "comprehensive" nature of the workers' compensation act's regulatory scheme, and its governance of medical reimbursement in particular. *See Apollo*, 301 S.W.3d at 860; *Eckerd*, 162 S.W.3d at 264–66; *Howell*, 143 S.W.3d at 435–38. Third, we emphasized that the Legislature has provided specific adjudicatory mechanisms and remedies by which the Division could determine and enforce the respective rights of providers and carriers regarding medical reimbursement. *See Apollo*, 301 S.W.3d at 860–61; *Eckerd*, 162 S.W.3d at 265, 266 n.12; *Howell*, 143 S.W.3d at 435–38. In

32

*Eckerd*, for example, we observed that the act and Division rules provided mechanisms for resolving disputes between providers and carriers regarding the proper amount of reimbursement due, 162 S.W.3d at 265 & n.9, empowered the Division to grant administrative remedies that we deemed equivalent to the common-law remedies Texas Mutual was pursuing—including ordering "refunds" under Labor Code section 413.016 and awarding interest on them, *see id.* at 266 n.12 (citing Tex. Lab. Code §§ 413.016, .019)—and likewise authorized the Division to impose administrative sanctions that included reducing fees or revoking or suspending a provider's right to receive them, *see id.* (citing Tex. Lab. Code § 415.023(b)(1), (4)). The Legislature's provision of such procedures and remedies in the context of the act's "comprehensive" regulatory scheme, we reasoned, evidenced intent that they serve as the sole means of initially determining and enforcing the statutory rights and duties at issue, to the exclusion of the jurisdiction the courts would otherwise possess. *See Apollo*, 301 S.W.3d at 860–63.

On the other hand, we have also recognized that not every claim related to medical reimbursement presents a medical-fee dispute and falls within the Division's exclusive jurisdiction. As we explained in Apollo, "[w]hat matters" with regard to the Division's exclusive jurisdiction over medical-fee disputes "is whether the claims are based on the alleged failure of carriers to pay . . . in compliance with the statutes and rules governing . . . fee reimbursement," whether by underpayment or overpayment, such that adjudication would require determination of the specific amount due under those standards and thereby infringe the Division's sole power to initially determine those issues. *See id.* at 865; *cf. Fodge*, 63 S.W.3d at 803. Although we concluded that two of the claims at issue in *Apollo* were predicated on alleged entitlements to particular amounts of reimbursement due from a carrier, thereby presenting medical-fee disputes, we held that two other claims did not because they

33

presumed the carrier had paid the correct amount of reimbursement due under the act and rules and complained only that the defendant had acted wrongfully in depriving the plaintiff the opportunity to establish an entitlement to greater reimbursement. *See Apollo*, 301 S.W.3d at 867–69. A parallel distinction is recognized in the progeny of *Fodge*, which have distinguished between claims by injured workers that would have the effect of establishing a right to workers' compensation benefits, thereby infringing the Division's exclusive jurisdiction to award such benefits, and claims that did not seek such benefits or presumed the absence of workers' compensation coverage, which have been held to be beyond the Division's jurisdiction to decide.[24]

In *Apollo*, we further held that those two claims did not present a medical-fee dispute or otherwise fall within the Division's exclusive jurisdiction merely because the plaintiff sought damages predicated on the reimbursement amounts that a carrier hypothetically would have been required to pay it absent the defendant's conduct, observing "[t]hat is not the same issue that is presented in a medical-fee dispute." *See id.* at 870. We additionally observed that the Legislature had not provided any procedural mechanisms through which the Division could adjudicate this

---

[24] *Cf. In re Texas Mut. Ins. Co.*, 157 S.W.3d 75, 81 (Tex. App.—Austin 2004, orig. proceeding) (breach-of-contract claim against carrier for damages allegedly caused by denial of benefits "presuppose[d] the existence of a workers' compensation policy and quite plainly seeks benefits due under that policy," thereby implicating the Division's exclusive jurisdiction) *with id*. at 81–82 (contrasting claim for damages based on negligence in causing gap in coverage, which did not seek benefits or damages based on arising from wrongful deprivation of benefits the carrier owed) *and Texas Mut. Ins. Co. v. Texas Dep't of Ins., Div. of Workers' Comp.*, 214 S.W.3d 613, 619 (Tex. App.—Austin 2006, no pet.) (holding that negligence claim requiring determination of effective date of employers' liability policy did not implicate Division's exclusive jurisdiction, even while policy was contained in same form as workers' compensation policy and shared a common effective date, because the plaintiffs were not asserting a claim to workers' compensation benefits or based on their deprivation; "[t]he foundation of our analysis in *Texas Mutual* and the supreme court's analysis in *Fodge* was a pending claim whose resolution required a determination of a claimant's entitlement to workers' compensation benefits").

"what-might-have-been inquiry" or decide the various subsidiary issues that might bear upon it. *Id.*

*Apollo* thus reminds us of a more basic prerequisite for exclusive agency jurisdiction to make the initial determination regarding a claim or issue: the Legislature must have provided the agency a procedural mechanism for making that determination in the first place. *See id.* (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207–08 (Tex. 2002); *Texas Mut. Ins. Co. v. Texas Dep't of Ins.*, *Div of Workers' Comp.*, 214 S.W.3d 613, 619 (Tex. App.—Austin 2006, no pet.). More generally, the scope of the administrative remedy (if any) as it compares to a common-law or equitable one is one indicator of whether the Legislature intended to supplant the latter with the former. *See Eckerd*, 162 S.W.3d at 266 n.12 (reasoning that "[t]he ability of the [Division] to fully compensate the injured party, to sanction parties that violate the Act, and to establish and enforce the Act's provisions further demonstrates the [L]egislature's intent to grant the [Division] exclusive jurisdiction over these claims," and contrasting these remedies with the like-kind-replacement remedy at issue in *Cash America*).

The parties' competing contentions regarding the district court's jurisdiction here distill down essentially to whether Texas Mutual's claims for monetary relief are materially identical to its claims in *Eckerd*, as Vista suggests, or are more closely akin to the two claims in *Apollo* that were held not to present medical-fee disputes, as Texas Mutual insists. In support of its view, Vista urges that Texas Mutual's monetary claims fall squarely within the scope of act provisions and Division rules that authorize carriers to obtain "refunds" of reimbursement paid in excess of amounts properly owed under the act and Division rules. Vista emphasizes Labor Code section 413.016(a), which mandates that the Division "shall order a refund of charges paid to a health care provider in excess of those allowed by the medical policies or fee guidelines." *See* Tex. Lab. Code § 413.016(a);

35

*Eckerd*, 162 S.W.3d at 266 n.12. Whether a carrier is entitled to a refund under section 413.016(a), as Vista observes, presents a medical-fee dispute, as it turns on whether the carrier has paid "charges . . . in excess of those allowed by the medical policies or fee guidelines." Consequently, as Vista suggests, section 413.016(a) contemplates that a carrier can (or must) obtain the refund remedy through the Division's medical-fee-dispute-resolution process. In fact, Vista emphasizes, the Division's rules prescribe procedures for adjudicating carrier "refund" claims and explicitly include such disputes in its definition of "medical-fee dispute." *See* 28 Tex. Admin. Code §§ 133.304(a), (o), (p) (carrier may "request[] reimbursement for an overpayment" in response to a provider's bill and seek medical-dispute resolution if the provider does not timely pay the amount of refund requested); .305(a)(2) (defining "medical-fee disputes" to include a "refund request dispute"—"a carrier dispute of a health care provider reduction or denial of the carrier request for refund of payment for health care previously paid by the carrier"). Assuming the medical-dispute-resolution process yields a final determination that the amount of charges "allowed by the medical policies or fee guidelines" is less than the amount the carrier paid, section 413.016(a) requires that the Division "shall order a refund" of those excessive payments. *See* Tex. Lab. Code § 413.016(a).[25]

---

[25] Vista additionally asserts that Texas Mutual's monetary claims fall within another provision of the workers' compensation act, Labor Code section 408.0271, which states that "[i]f the health care services provided to an injured employee are determined to be inappropriate," the carrier "shall . . . demand a refund by the health care provider of the portion of the payment on the claim that was received by the health care provider for the inappropriate services." *See* Tex. Lab. Code § 408.0271(a). Although Texas Mutual originally cited section 408.0271 as authority for its "negative" EOBs and refund requests, it has subsequently contended that the provision is not applicable to the entitlement it claims here. Conversely, Vista has previously asserted that section 408.0271 was inapplicable to Texas Mutual's claims, but suggests otherwise now. We agree

Drawing on our reasoning in *Eckerd*, *Apollo*, and *Howell*, Vista adds that the Legislature's provision of these administrative remedies, viewed in the context of the workers' compensation act's "pervasive regulatory scheme," reflects its intent that the remedies serve as the sole means by which Texas Mutual can recover any excess payment of medical reimbursement it made to Vista. *See Apollo*, 301 S.W.3d at 860; *Eckerd*, 162 S.W.3d at 264–66; *Howell*, 143 S.W.3d at 435–38. In other words, according to Vista, Texas Mutual can obtain recovery or "refunds" of additional reimbursement it paid under the now-invalidated administrative orders only if it litigates, and ultimately defeats, Vista's claim for stop-loss reimbursement—now remanded to the Division, and yet to be resolved—through the Division's medical-dispute-resolution process. This statutory scheme, Vista insists, divests the district court of any subject-matter jurisdiction to award Texas Mutual the monetary relief challenged here.

---

with Texas Mutual's current position that the "refund" claim contemplated by section 408.0271 is not directly relevant here.

The refund claim provided by section 408.0271 arises "[i]f the health care services provided to an injured employee are determined to be inappropriate." *See id.* The meaning of "inappropriate" health-care services or charges under section 408.0271 is informed by the section that immediately precedes it, 408.027, which authorizes carriers to respond to medical-reimbursement claims by auditing the "relationship of the health care services provided to the compensable injury, the extent of the injury, and the medical necessity of the services provided." *See id.* § 408.027(b). However, if a carrier exercises its audit rights, section 408.027 requires it to make partial payment of a defined percentage of the charges pending the audit's outcome. *See id.* In the event "the health care services provided are determined to be appropriate" by the audit, the carrier must then pay the remaining portion due. *See id.* § 408.027(c). Read in this context, section 408.0271's "refund" claim appears to be addressed to the converse situation—the audit determines that some portion of the charges that the carrier previously was required to pay turn out not to have been "appropriate," in terms of compensability, extent-of-injury, or medical necessity—in which case the carrier is authorized to recover the partial payment it had previously made. *See id.* § 408.027(b), (c). The present medical-fee disputes do not involve the circumstances to which section 408.0271 is addressed.

In response, Texas Mutual acknowledges that Labor Code section 413.016(a) and the Division rules provide a "refund" remedy to carriers who pay providers medical reimbursement "in excess of those allowed by the medical policies or fee guidelines." It likewise admits that its claims here can be said to seek a type of "refund" of reimbursement it contends it does not properly owe Vista under the 1997 hospital fee guidelines—indeed, it has used the term "refund" throughout this litigation to describe the relief it seeks. Also, as previously noted, Texas Mutual seemed to accept below that the Division "could order such refunds," at least after the administrative proceedings on remand had yielded a final determination that Vista was not entitled to stop-loss reimbursement. On appeal, however, Texas Mutual questions whether the "refund" remedy under section 413.016(a) encompasses claims arising, as do its claims here, from the payment of additional reimbursement in compliance with an administrative order in a medical-fee dispute that is later reversed. According to Texas Mutual, section 413.016(a) contemplates only carrier "refund" claims that arise from overpayments of reimbursement occurring during a carrier's initial processing of a provider's reimbursement claim. Relatedly, Texas Mutual disputes whether the workers' compensation act or Division rules provide any procedural mechanism through which carriers in Texas Mutual's situation, as opposed to carriers who have made overpayments during initial claims processing, can invoke the Division's medical-fee-dispute-resolution process to obtain the necessary determinations for refund relief under section 413.016(a). In support, Texas Mutual cites Division rules imposing a deadline of 45 days after date of service for a carrier to request a "refund" or take other "final action" on a bill, *see* 28 Tex. Admin. Code § 133.304, and a deadline of one year from the date of the services at issue for a carrier to request medical-dispute resolution in a refund-request dispute, *see id.* § 133.307(d)(2).

But even assuming that the "refund" remedy contemplated by section 413.016(a) would otherwise permit it to recoup the additional reimbursement payments upon a final determination, through the Division's medical-fee-dispute-resolution process, that Vista is not entitled to stop-loss reimbursement, Texas Mutual insists that the mere existence of this remedy does not in itself suffice to establish legislative intent to supplant the district court's jurisdiction to grant the monetary relief it awarded here. Why this is so, Texas Mutual reasons, begins with a conceptual distinction between an "ultimate" determination of Vista's entitlement to stop-loss reimbursement, which is the focus of the Division's medical-fee-dispute-resolution processes and the section 413.016(a) "refund" remedy, and what the carrier views as the focus of the theory of recovery on which the judgment awards were based—money had and received.

An action for money had and received is equitable in nature and belongs conceptually to the doctrine of unjust enrichment. *See Best Buy Co. v. Barrera*, 248 S.W.3d 160, 162 (Tex. 2007) (per curiam); *Edwards v. Mid-Continent Office Dist., L.P.*, 252 S.W.3d 833, 837 (Tex. App.—Dallas 2008, pet. denied) (quoting *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ)). The doctrine of unjust enrichment characterizes the result of a failure to make restitution under circumstances that give rise to an implied or quasi-contractual obligation to return those benefits. *See Edwards*, 252 S.W.3d at 837 (citing *Amoco*, 946 S.W.2d at 164). An action for restitution via money had and received is said to lie whenever the defendant holds money that "in equity and good conscience" "belongs" to the plaintiff "under the particular circumstances of each case." *Best Buy*, 248 S.W.3d at 162; *Staats v. Miller*, 243 S.W.2d 686, 687 (Tex. 1951); *see also id.* (also describing the standard as "to which party does the money, in equity, justice, and law, belong"). The action is not premised on wrongdoing, but rather "aims at the abstract justice of the

39

case, and looks solely to the inquiry whether the defendant holds money, which . . . belongs to the plaintiff." *Staats*, 243 S.W.2d at 687–88 (quoting *United States v. Jefferson Elec. Mfg. Co.*, 291 U.S. 386, 403 (1934)). It has also been said that "a cause of action for money had and received is 'less restricted and fettered by technical rules and formalities than any other form of action.'" *Id.* at 687 (quoting *Jefferson*, 291 U.S. at 402–03).

In support of summary judgment on its money-had-and-received claims, Texas Mutual has asserted that the disputed funds "belong" to it in "equity and good conscience" because the 1997 hospital fee guideline presumes per-diem reimbursement and that, as of the time of the district court judgments below, Vista has no valid order entitling it to the higher stop-loss payments. In essence, Texas Mutual has argued that unless and until Vista can show itself entitled to stop-loss reimbursement on remand, the equities weigh in favor of returning the disputed additional reimbursement to the carrier, thereby returning it to the same economic position in which it would have been had the funds never been awarded or paid to Vista in the first place. Relatedly, Texas Mutual has relied on longstanding precedent holding that these equitable principles generally require that a party who had received payment under a judgment that is subsequently reversed must make restitution to the party who paid the judgment. *See Miga v. Jensen*, 299 S.W.3d 98, 101 (Tex. 2009) (citing *Bank of U.S. v. Bank of Wash.*, 31 U.S. 17 (1832); *Cleveland v. Tufts*, 7 S.W. 72, 74 (Tex. 1888)).

Whether it is entitled to recover the disputed funds in "equity and good conscience," in Texas Mutual's view, does not require a determination of Vista's entitlement to stop-loss reimbursement, the *sine qua non* of medical-fee disputes. *See Apollo*, 301 S.W.3d at 865. Texas Mutual similarly distinguishes its money-had-and-received theory on the basis that it goes

40

only to whether it or Vista should be entitled to hold the disputed funds now, in the interim pending the "ultimate" determination of Vista's entitlement to stop-loss reimbursement, and does not implicate the Division's exclusive jurisdiction to initially determine that ultimate issue. Further, because its money-had-and-received claims are rooted in equitable and common-law principles rather than the workers' compensation act, Texas Mutual reasons, we should not construe the workers' compensation act to deprive them of this remedy absent "clear expression" of such legislative intent. *See Cash America*, 35 S.W.3d at 16. That required "clear expression" of legislative intent is lacking, Texas Mutual suggests, because the workers' compensation act does not address or purport to supplant judicial power to award interim relief like the district court fashioned here, if indeed the act addresses "refunds" or other relief for carriers in Texas Mutual's situation at all.

The substance of the parties' contentions join issue with respect to two basic sets of considerations in our analysis of the Division's jurisdiction. The first is whether the workers' compensation act provides any administrative remedy through which an insurance carrier in Texas Mutual's position, one that has paid additional reimbursement to comply with an administrative order in a medical-fee dispute that is ultimately reversed on judicial review, can potentially recoup those funds. *See Apollo*, 301 S.W.3d at 870. Vista urges that the "refund" remedy of section 413.016(a) is such a remedy, while Texas Mutual disputes whether that remedy would lie where, as here, the allegedly excessive reimbursement payment stems from an administrative order in a medical-fee dispute that is ultimately reversed. Assuming Vista is correct that section 413.016(a) would provide Texas Mutual a remedy through which it could recover the disputed funds (assuming the carrier ultimately prevails, through the Division's

41

medical-fee-dispute-resolution process, on Vista's ultimate or underlying claim for stop-loss reimbursement on remand), the next question is whether the Legislature intended that remedy to serve as the sole and exclusive means for Texas Mutual to recover the additional reimbursement, to the extent of divesting the district courts of any jurisdiction they might otherwise possess to award the monetary relief at issue here. We conclude that both questions must be answered in the affirmative.

Turning first to whether the section 413.016(a) refund remedy would lie for a carrier in Texas Mutual's situation, we find it significant that the Legislature did not place any limitations or qualifications on the circumstance under which a carrier would come to pay "charges . . . to a health care provider in excess of those allowed by the medical policies or fee guidelines," so as to require the Division to order a "refund." *See* Tex. Lab. Code § 413.016(a). The text of section 413.016(a) does not, in other words, draw the distinction Texas Mutual advocates between excessive reimbursement occurring due to a subsequently reversed administrative order in a medical-fee dispute, as here; or because of allegedly improper billing practices, the situation in *Eckerd*; or because of accidents or errors in processing claims, as Texas Mutual suggests; or any other reason. And the absence of any such distinction in the statute is especially telling in the context of other statutory provisions that contemplate that section 413.016(a) "refunds" will arise from circumstances like those here.

The Legislature has crafted a medical-fee-dispute-resolution regime under which (1) the Division initially determines the amount of reimbursement owed by a carrier to a provider; (2) a party aggrieved by the Division's decision (which can include a carrier or provider) may "appeal" to a SOAH contested-case hearing under the APA, *see id.* § 413.031(k); (3) the ALJ renders

the final administrative order, *see id.* § 402.073(b), subject to judicial review, *see id.* § 413.027(k-1);

but (4) the administrative order remains effective unless and until the court reverses the order and

remands the proceedings required by the APA, *see* Tex. Gov't Code §§ 2001.174(2), .176(b)(3).

Collectively, this regime anticipates that (1) a carrier can be compelled to pay reimbursement to a

provider under an administrative order that is later reversed and that (2) further administrative

proceedings on remand may determine that the carrier does not owe the additional reimbursement

after all, (3) requiring that the Division "shall order a refund of charges paid to a health care

provider in excess of those allowed by the medical policies or fee guidelines." *See* Tex. Lab. Code

§ 413.016(a).[26] We must presume that the Legislature crafted this statutory scheme deliberately and

with awareness of these consequences. *See Texas Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452

(Tex. 2012) (presuming that "the Legislature deliberately and purposefully selects words and phrases

it enacts, as well as deliberately and purposefully omits words and phrases it does not enact") (citing

*Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010)); *City of

DeSoto v. White*, 288 S.W.3d 389, 395 (Tex. 2009) (noting that Legislature is aware of consequences

of its enactments). Moreover, in the context of the workers' compensation act, this is not only a

presumption but an established fact: as we have frequently observed, the act creates a "pervasive"

and "comprehensive" regulatory scheme in which the Legislature has carefully balanced the interests

of injured workers, employers, insurance carriers, and other system participants to achieve a viable

compensation system. *See, e.g.*, *Apollo*, 301 S.W.3d at 860; *Mid-Century Ins. Co. v. Texas Workers'*

---

[26] This analysis might be different if, as Texas Mutual urges in its cross-point, the APA authorized the district court to award it recoupment of the disputed funds incident to its reversals of the administrative orders. But we reject that contention below.

*Comp. Comm'n*, 187 S.W.3d 754, 758 (Tex. App.—Austin 2006, no pet.); *Eckerd*, 162 S.W.3d at 264–66; *Howell*, 143 S.W.3d at 435–38. We must conclude that the Legislature intended section 413.016(a) to serve as a remedy for carriers in Texas Mutual's situation.

While Texas Mutual suggests otherwise, this statutory regime anticipates and provides a procedural mechanism for determining whether "charges [were] paid to a health care provider in excess of those allowed by the medical policies or fee guidelines," as a predicate to refund relief under section 413.016(a). Namely, upon reversal of the administrative orders, the APA required the district court to remand Vista's claims for stop-loss reimbursement for redetermination, through the medical-fee-dispute-resolution process before the Division (and possibly SOAH, and then judicial review in district court), under a correct, threshold-plus construction of the stop-loss exception. *See* Tex. Gov't Code §§ 2001.174(2). If these proceedings yield a final determination that Vista is entitled to stop-loss reimbursement, Texas Mutual would have no right to those funds. If, on the other hand, the proceedings yield a final determination that Vista is not entitled to stop-loss reimbursement, section 413.016(a) would require the disputed funds to be refunded to Texas Mutual. *See* Tex. Lab. Code § 413.016(a). Texas Mutual insists, however, that the most likely outcome on remand if it is not awarded the disputed funds immediately is that Vista will simply dismiss or fail to prosecute its pending reimbursement claims because it already possesses the funds and stands only to lose or keep them in any further administrative proceedings. Were Vista to do so, it would amount to an abandonment or concession of any claim to stop-loss reimbursement, leaving the standard per-diem rates as the governing standard, and again requiring the Division to order Vista to refund any reimbursement that Texas Mutual paid beyond those amounts. *See id.*

Assuming the existence of this refund remedy under section 413.016(a), Texas Mutual seems to acknowledge that if it were to pursue "refunds" or recovery of the additional reimbursement it paid Vista predicated on a determination that Vista did not satisfy the requirements of the stop-loss exception, those claims would be medical-fee disputes within the Division's exclusive jurisdiction. *See Eckerd*, 162 S.W.3d at 263–67. In insisting that its money-had-and-received claims do not implicate the Division's exclusive jurisdiction, Texas Mutual ultimately relies on asserted conceptual distinctions between the timing of the relief sought (interim immediate relief versus relief whenever Vista's claims to stop-loss reimbursement are finally determined) and the legal theories presented (who in "equity and good conscience" should be deemed to "own" the funds now versus whether Vista qualifies for stop-loss reimbursement under a correct application of the stop-loss exception).[27] We conclude that these conceptual distinctions were of no moment to the Legislature when enacting the workers' compensation act, and that it instead intended the medical-fee-dispute-resolution process to supplant judicial jurisdiction to award relief like the district court provided here. We reach this conclusion for three basic reasons.

First, although Texas Mutual strives to portray its money-had-and-received claims as being rooted solely in equity or the common law, the claims instead seek redress for alleged

---

[27] As previously noted, the Division has joined with Texas Mutual in distinguishing between medical-fee disputes and "interim" equitable relief between parties to such disputes, although the agency has not briefed the issue extensively. In contrast to the Division's litigation position regarding the sufficiency of Texas Mutual's EOBs, which rested upon the agency's authoritative constructions of statutes and rules in past medical-fee-dispute decisions, the Division does not assert that we should give any heightened deference to its litigation position regarding jurisdiction. *Cf. Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006) (distinguishing between "formal opinions adopted after formal proceedings" and "opinions in documents like the . . . amicus brief here"). Neither does Texas Mutual.

injury that derives from the workers' compensation act—medical reimbursement Texas Mutual paid to Vista in excess of the amounts to which the carrier claims the provider is properly entitled under the act and Division rules. While Texas Mutual attempts to distinguish between an "ultimate" determination of Vista's entitlement to stop-loss reimbursement versus a determination of whether Vista should get to keep the stop-loss reimbursement it was paid under the now-invalidated administrative orders in the meantime, in either case Texas Mutual seeks relief based on contentions that Vista has not shown itself entitled under the workers' compensation act and rules to a particular amount of medical reimbursement—a claim that, as we observed in *Eckerd*, is "'common law' in name only." *Eckerd*, 162 S.W.3d at 266. Texas Mutual's asserted distinctions between the claims, in other words, boil down ultimately to mere differences in their temporal focus—one asks whether Vista has failed to establish an entitlement to stop-loss reimbursement upon final adjudication of that issue, the other asks whether Vista has established such an entitlement yet. In both, the nature of the claimed injury is identical, deriving from rights and duties rooted solely in the workers' compensation act's provisions governing medical reimbursement and not the common law. *See Apollo*, 301 S.W.3d at 867 ("As we explained in *Eckerd*, the right to recover any particular amount of reimbursement from a workers' compensation insurance carrier for [health care] services provided . . . to an injured worker is entirely a function of the workers' compensation act and Division rules."). This is the sort of injury at issue in cases like *Eckerd* and *Howell* rather than in *Cash America*.

The second reason, to which we have already alluded, is that the Legislature intended the workers' compensation act to serve as a "pervasive" and "comprehensive" scheme governing the provision of benefits to injured workers, including the manner in which health-care providers

46

are compensated for providing services within that system. *See, e.g.*, *Apollo*, 301 S.W.3d at 860; *Eckerd*, 162 S.W.3d at 264–66; *Howell*, 143 S.W.3d at 435–38. Each feature of that scheme reflects painstaking Legislative economic and policy judgments as to the appropriate means of balancing the often-competing interests of participants to achieve a viable compensation system within constitutional limitations. *See, e.g.*, *Mid-Century*, 187 S.W.3d at 758. In the context of this comprehensive statutory framework, it seems doubtful that the Legislature intended to leave the courts free to fashion "interim" monetary relief between parties to pending medical-fee disputes, so long as the relief purported to avoid the "ultimate" question of the proper amount of reimbursement that is owed.

This observation brings us to the third reason why we conclude the Legislature intended the section 413.016(a) refund remedy to supplant such "interim" relief, which is closely related to the second: Texas Mutual's view would invite disruptions to the workers' compensation act's careful balancing of interests that the Legislature could not possibly have intended. *See Great-West Life & Annuity Ins. Co. v. Texas Attorney Gen. Child Support Div.*, 331 S.W.3d 884, 899 (Tex. App.—Austin 2011, pet. denied); *see also* Tex. Gov't Code § 311.023(5) (permitting consideration of consequences of a particular statutory construction). Texas Mutual's view would imply that there is no impediment, as far as the act is concerned, to a court ordering a workers' compensation insurance carrier to make advance payment of the entirety of a provider's bill because this is merely "interim" relief that does not address the provider's "ultimate" entitlement to payment under the act and Division rules. Even if the carrier might "ultimately" prevail in the underlying medical-fee dispute and recover the funds, the compulsory interim payments, as Texas Mutual's own arguments tacitly recognize, would nonetheless risk substantial disruptions of the economic

47

relationship of the parties and the viability of the workers' compensation regime. *Cf. Cities of Corpus Christi v. Public Util. Comm'n*, 188 S.W.3d 681, 690–91 (Tex. App.—Austin 2005, pet. denied) (making an analogous observation regarding interim awards of "stranded costs"). Indeed, if courts were left free to fashion interim relief based on such malleable and idiosyncratic guideposts as "equity and good conscience," there would soon be little left of the Legislature's careful balancing of interests. Rather than leaving such a gap or hole in the act's "comprehensive" and "pervasive" regulatory scheme, we conclude that the Legislature instead addressed the issue with the section 413.016(a) refund remedy and other features of the medical-fee-dispute-resolution process. *Cf. Ruttiger*, 381 S.W.3d at 443 (relying on its notion that "'it is conceptually untenable that the Legislature would have enacted two alternative statutory remedies, one that enacts a structured scheme . . . and carefully constructs rights, remedies, and procedures . . . and one that would significantly undermine that scheme'" to hold that workers' compensation claimants may not assert claims under the Insurance Code) (quoting *City of Waco v. Lopez*, 259 S.W.3d 147, 155–56 (Tex. 2008)).

We hold that Texas Mutual's sole remedy for recovering medical reimbursement it paid to Vista under the administrative orders reversed by the district court is to pursue refunds under Labor Code section 413.016(a) in the further medical-fee-dispute-resolution proceedings on Vista's claims to stop-loss reimbursement. Because this determination is vested solely in the Division (and, in turn, SOAH), subject only to judicial review under the APA, the district court lacked subject-matter jurisdiction to award those funds to Texas Mutual in the judgments. Accordingly, we sustain Vista's first issue, reverse the judgment awards of monetary relief, and render judgment dismissing Texas Mutual's money-had-and-received claims for want of jurisdiction.

48

Our disposition of Vista's first issue makes it unnecessary for us to reach its second and fourth issues, which present other challenges to the district court's judgment awarding monetary relief on Texas Mutual's money-had-and-received claims. *See* Tex. R. App. P. 47.1.[28] This leaves only Texas Mutual's cross-point, in which it argues that the district court possessed subject-matter jurisdiction to award the disputed funds under the APA as relief incidental to reversal of the administrative orders and remanding of Vista's stop-loss claims for further proceedings. The APA provisions governing substantial-evidence review do not explicitly mention monetary relief—they state only that a reviewing court, upon finding legal error that prejudiced a petitioner's "substantial rights," "shall reverse or remand the case for further proceedings." *See* Tex. Gov't

---

[28] However, we emphasize that we are expressing no opinion as to whether, apart from the jurisdictional defects we have identified, the district court had discretion under the circumstances here to award the relief under a money-had-and-received theory. Within its second issue, Vista asserts that Texas Mutual's money-had-and-received claims inherently presented issues within the Division's exclusive jurisdiction over medical-fee disputes, such that the district court's purported avoidance of those issues when granting summary judgment amounted to an abuse of discretion under the equitable principles that govern such claims. Vista emphasizes the Texas Supreme Court's recent recognition that defendants in money-had-and-received claims are entitled to "present any facts and raise any defenses that would deny the claimant's right or show that the claimant should not recover," including particular circumstances showing that "in equity and good conscience" the disputed funds should belong to the defendant rather than the claimant. Best Buy Co. v. Barrera, 248 S.W.3d 160, 162 (Tex. 2007) (per curiam); *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 205–06 (Tex. 2007). Such "facts" and "defenses," Vista suggests, would necessarily include whether Vista was entitled to stop-loss reimbursement under a proper threshold-plus view of the exception—i.e., that the original administrative order compelling payment in each case, while founded on reversible error, ultimately reached the right result. Relatedly, Vista asserts that Texas cases awarding equitable restitution of debts previously paid under subsequently reversed judgments have uniformly turned on appellate judgments that not only reverse the lower-court judgments imposing the debt, but render judgment definitively negating the debt's existence—not situations where, as here, the existence of the potential judgment debt remains an unresolved issue on remand. From either perspective, Vista urges, the issue of its ultimate entitlement to stop-loss reimbursement is inseparable from the "equity and good conscience" inquiry, properly applied. This is a close question, but one that we need not reach here.

49

Code § 2001.174(2). Nor does Texas Mutual refer us to any case in which a court has awarded monetary relief incident to reversing and remanding an administrative order. However, it relies on *Southwestern Bell Telephone Co. v. Public Utility Commission*, 615 S.W.2d 947 (Tex. App.—Austin 1981), *aff'd*, 622 S.W.2d 82 (Tex. 1981), in which we held that "meaningful and effective" judicial review in a utility rate case allowed error correction on remand made effective back to the date of the agency's original order. *See id.* at 955–56. Emphasizing *Southwestern Bell*'s notion that the APA is intended to provide "effective" relief via judicial review, Texas Mutual extrapolates that it authorized the district court to award it recoupment of the disputed funds to ensure that its remand of Vista's stop-loss reimbursement would be fully "effective" and Vista would not simply move its assets to China and potentially make the funds uncollectible.

In response, Vista asserts that Texas Mutual is seeking relief more favorable than that afforded it in the judgment and, consequently, was required to perfect its own appeal in order to raise its complaint. *See* Tex. R. App. P. 25.1(c) ("A party who seeks to alter the trial court's judgment . . . must file a notice of appeal). Because Texas Mutual did not file a notice of appeal, Vista insists, we lack jurisdiction to consider the complaint. *See id.*; *Texas Bd. of Chiropractic Exam'rs v. Texas Med. Ass'n*, 375 S.W.3d 464, 491–92 (Tex. App.—Austin 2012, pet. filed) (holding that appellate court lacked jurisdiction to consider appellee's cross-point seeking to alter trial court's judgment because appellee had failed to file separate notice of appeal). Alternatively, Vista insists that the APA does not authorize the monetary relief and that, in any event, the claims would implicate the Division's exclusive jurisdiction in the same manner that the money-had-and-received claims did.

Assuming without deciding that Texas Mutual preserved this complaint for appellate review, we would hold that, in the absence of further support in the APA's text or Texas Supreme Court precedent telling us otherwise, the APA does not authorize the monetary relief Texas Mutual seeks. We overrule Texas Mutual's cross-point.

## CONCLUSION

In light of our disposition of the parties' issues, we affirm the district court's judgments reversing the administrative orders and remanding Vista's claims for stop-loss reimbursement to the Division for further proceedings. We reverse the district court's judgments awarding Texas Mutual monetary relief and render judgments dismissing those claims for want of jurisdiction. However, because Texas Mutual has asserted alternative constitutional and statutory claims that may not be directly impacted by these holdings, we remand these causes to the district court for further proceedings consistent with this opinion. We express no opinion as to the district court's jurisdiction to award relief based on Texas Mutual's surviving claims or theories.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Rose

Affirmed in part; Reversed and Rendered in part; Reversed and Remanded in part

Filed:   June 6, 2013