# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00034-CV

**Texas Department of Family and Protective Services, Appellant**

**v.**

**C. A., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
### NO. D-1-GN-16-003718, HONORABLE KARIN CRUMP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The Texas Department of Family and Protective Services appeals from a final judgment of the district court reversing the Department's order concluding that C.A. "neglected a child" and that the Department was authorized to list her name in its central registry of reported cases of child abuse or neglect. *See* Tex. Fam. Code §§ 261.002 (central registry), .401 (defining "neglect" for purposes of investigations of neglect in child-care facilities).[1]  We will reverse the trial court's judgment and render judgment affirming the Department's order.

---

[1]  Texas Family Code section 261.401 was amended effective September 1, 2017. *See* Act of May 24, 2017, 85th Leg., R.S., ch. 1136, §§ 5, 14, 2017 Tex. Gen. Laws 4339, 4342, 4346 (codified at Tex. Fam. Code § 261.401(a), (b)).  Citations in this opinion are to the version of section 261.401 in effect at the relevant time period.

## BACKGROUND[2]

In November 2014, C.A. was employed as a caregiver at a child care center operated by the YMCA. On November 14, 2014, C.A. and a second caregiver, J.F., were responsible for a group of eight children they were transporting from the Ambassador Preparatory Academy to a YMCA facility. On the way to the YMCA facility, C.A. stopped at a nearby park to allow the children to play. Before leaving the park, C.A. lined the children up to be loaded into the van. J.F. was at the back of the van loading equipment while C.A. checked off the names of the children standing in line to board the van. H., a four-year-old child, was in line and was counted. Once C.A. and J.F. got in the van, neither one of them recounted the children in the van before leaving the park. After C.A. had driven five blocks away from the park, she asked J.F. to count the children. It was then that they discovered that H. had been left behind at the park.[3] H. was alone and unsupervised at the park for approximately ten minutes when he was found by a stranger and taken to a nearby elementary school. C.A. then retrieved H. and took him to the YMCA facility.

The Department investigated whether C.A. had neglected H. while he was in her care. *See* Tex. Fam. Code § 261.401. At the conclusion of its investigation, the Department staff issued an investigative report and determined that C.A. had neglected H. by leaving him alone and unattended at a park. *See id.* § 261.401(a)(3); 40 Tex. Admin. Code § 745.8559 (Dep't of Family & Protective Servs., What is neglect?). Based on its finding that C.A. committed neglect, specifically

---

[2] The facts recited herein are derived from evidence presented at a contested case hearing held before an Administrative Law Judge and, unless otherwise indicated, are not disputed by the parties.

[3] The evidence was conflicting as to whether H. boarded the van and then got off or whether he failed to board the van at all. It was, however, undisputed that H. was left behind at the park.

2

neglectful supervision, as defined by the Texas Family Code and the Texas Administrative Code, the Department placed her name on the Department's central registry for reported child abuse and neglect.[4] Contesting the finding of neglect and the placement of her name on the registry, C.A. sought a "due process hearing" in accordance with Department administrative rules. *See* Tex. Fam. Code §§ 261.308-.309; 40 Tex. Admin. Code §§ 745.8831-.8855 (Dep't of Family & Protective Servs., Due Process Hearings). The Department referred the case to the State Office of Administrative Hearings, where a contested case hearing was held before an administrative law judge (ALJ). *See* 40 Tex. Admin. Code §§ 745.8843-.8845. Following the hearing, the ALJ issued a decision and order, upholding the decision of the Department. *Id.* § 745.8849 (providing that "ALJ may uphold, reverse, or alter [Department's] decision or action"). In relevant part, the ALJ found the following facts:

1. On November 14, 2014, C.A. (Petitioner) was employed as a caregiver with YMCA Building, a child-care center, and was responsible for supervising Child [H.], age 4.

2. [C.A.] was responsible for transporting the children from the Ambassador Preparatory Academy to the center. [C.A.] allowed the children to play at Schreiber Park before taking them to the center.

3. [C.A.] failed to ensure that all children were accounted for before leaving the park because she did not recount the children after they were loaded onto the van.

---

[4] When the Department makes a "summary finding" that it has "reason to believe" that an individual is a "designated perpetrator" of "abuse" or "neglect," *see* 40 Tex. Admin. Code §§ 700.511(a)(1) (Dep't of Family & Protective Servs., Disposition of Allegations of Abuse or Neglect), .512(b)(2) (Conclusions about Roles), that individual's name is placed in the Department's central registry of reported child abuse and neglect. *See* Tex. Fam. Code § 261.002(a); 40 Tex. Admin. Code § 700.104 (Dep't of Family & Protective Servs., Child Abuse and Neglect Central Registry). Unless overturned, the individual's status as a "designated perpetrator" may be disclosed to third parties, such as licensed child-care facilities investigating the individual's background for prospective employment. *See* Tex. Hum. Res. Code § 42.0445; *see also* 40 Tex. Admin. Code § 745.615 (Dep't of Family & Protective Servs., On whom must I request background checks?).

4. Child was left at the park for approximately 10 minutes without supervision.

5. Child was found by a stranger and taken to an elementary school near the park.

6. [C.A.] did not realize that Child was unaccounted for until after she had driven five blocks away from the park, and then requested her co-worker J.F. to count the children.

7. Petitioner did not maintain proper audio and visual awareness of Child.

8. During the time the Child was alone and unsupervised, he was placed at risk of being kidnapped or struck by a motor vehicle.

Based on these underlying facts, the ALJ concluded that:

5. [C.A.'s] conduct, evidenced by Finding of Fact Nos. 1-8, meets the definition of neglect set out in Texas Family Code § 261.401(a)(3) and 40 Texas Administrative Code § 745.8559(3).

6. Based on Conclusion of Law No. 5, the Department's finding that [C.A.] neglected a child should be sustained.

7. The Department is authorized to list [C.A.'s] name in its central registry.

C.A. subsequently sought judicial review of the ALJ's order in district court. *See id.* §§ 745.8845 (providing that due-process hearing is governed, in part, by chapter 2001 of Texas Government Code); .8849 (providing that Department will follow decision of ALJ).

After a hearing, the district court rendered a final judgment in which it found that "no duty existed for [C.A.] to perform any actions above and beyond those actions taken and supported in the record" and that C.A. "did not breach any duty under Texas Family Code § 261.401 and 40 Texas Administrative Code §§ 745.8559 and 746.1205." The district court concluded that the ALJ's order was "not reasonably supported by substantial evidence considering the reliable and

4

probative evidence in the record as a whole" and, consequently, it reversed the ALJ's order. The Department then perfected this appeal and, in one issue, argues that the ALJ's finding of neglectful supervision was supported by substantial evidence and should be affirmed.

## STANDARD OF REVIEW

Our review of the Department's order is governed by the same analysis as in the district court—the "substantial evidence" rule codified in Texas Government Code section 2001.174. *See* Tex. Gov't Code § 2001.174. Under this standard, we must reverse and remand an agency decision if it prejudices substantial rights because its findings, inferences, conclusions, or decisions (1) violate a constitutional or statutory provision; (2) exceed statutory authority; (3) were made through unlawful procedure; (4) were affected by other error of law; (5) are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (6) are arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion. *Id.* Substantial evidence review is essentially a rational-basis test to determine, as a matter of law, whether an agency's order finds reasonable support in the record. *Employees Ret. Sys. of Tex. v. Garcia*, 454 S.W.3d 121, 132 (Tex. App.—Austin 2014, pet. denied) (citing *Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 453 (Tex. 1984)). "The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency." *Charter Med.-Dallas*, 665 S.W.2d at 452. We apply this analysis without deference to the district court's judgment. *See Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (per curiam). We presume that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence, and the

5

burden is on the party challenging the order to demonstrate otherwise. *Slay v. Texas Comm'n on Envt'l Quality*, 351 S.W.3d 532, 549 (Tex. App.—Austin 2011, pet. denied). "Ultimately, we are concerned not with the correctness of the agency's decisions, but its reasonableness." *Jenkins v. Crosby Indep. Sch. Dist.*, 537 S.W.3d 142, 149 (Tex. App.—Austin 2017, no pet.).

Substantial evidence analysis entails two inquiries: (1) whether the agency made findings of underlying facts that logically support the ultimate facts and legal conclusions establishing the legal authority for the agency's decision or action and, in turn, (2) whether the findings of underlying fact are reasonably supported by evidence. *See Vista Med. Ctr. Hosp. v. Texas Mut. Ins. Co.*, 416 S.W.3d 11, 26-27 (Tex. App.—Austin 2013, no pet.). The second inquiry, which has been termed the "crux" of the substantial evidence review, is highly deferential to the agency's determination. *Garcia*, 454 S.W.3d at 132. "[S]ubstantial evidence" in this sense "does not mean a large or considerable amount of evidence"—in fact, the evidence may even preponderate against the agency's finding—but requires only "such relevant evidence as a reasonable mind might accept as adequate to support a [finding] of fact." *Id.* (citing *Slay*, 351 S.W.3d at 549). The fact-finder, here the ALJ, determines the credibility of the witnesses and the weight to give their testimony, *see Granek v. Texas State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 778 (Tex. App.—Austin 2005, no pet.), and we "may not substitute [our] judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion." Tex. Gov't Code § 2001.174(1). In contrast, the first inquiry, concerning the extent to which the underlying facts found by the agency logically support its ultimate decision or action, may entail questions of law that we review de novo. *Garcia*, 454 S.W.3d at 133; *see Railroad Comm'n of Tex. v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011).

6

**DISCUSSION**

The Department's order rests on the ultimate finding and conclusion that C.A. neglected H., based on the definition of "neglect" in section 261.401(a)(3) of the Family Code. Section 261.401(a)(3) defines "neglect" as:

> a negligent act or omission by an employee, volunteer, or other individual working under the auspices of a facility or program, including failure to comply with an individual treatment plan, plan of care, or individualized service plan, that causes or may cause substantial emotional harm or physical injury to, or the death of, a child served by the facility or program as further described by rules or policy.

Tex. Fam. Code § 261.401(a)(3). The Department has further defined "neglect" by rule as an "act or omission that is a breach of duty by a person working under the auspices of an operation that causes or may cause substantial physical injury to a child." 40 Tex. Admin. Code § 745.8559. The rule provides that "breach of a duty" includes:

> (1) Failure to take an action that a reasonable member of that profession, reasonable caregiver, or reasonable person should take in the same situation;
>
> . . . .
>
> (3) Placing a child in or failing to remove him from a situation that a reasonable member of that profession, reasonable caregiver, or reasonable person should realize requires judgment or actions beyond the child's level of maturity, physical condition, or mental abilities;
>
> (4) Leaving a child in a situation where a reasonable member of that profession, reasonable caregiver, or reasonable person would expect the child to be exposed to substantial physical injury or substantial emotional harm without arranging for necessary care for the child; . . . .

40 Tex. Admin. Code § 745.8559 (1), (3), (4) (Tex. Dep't of Family & Protective Servs., What is neglect?).

7

At the hearing before the ALJ, the Department presented Child Care Licensing Investigator Josolyn Davis-McGowan. Davis-McGowan testified that her investigation revealed that C.A., along with co-worker J.F., was responsible for transporting eight children from a school to a YMCA facility. On the way, C.A. stopped at a park so that the children could play. After playing at the park for approximately two hours, C.A. and J.F. prepared to leave the park to take the children to the YMCA facility. On direct examination, Davis-McGowan testified that during the course of her investigation she learned that C.A. lined the children up to get in the van and checked a list to be sure that all children were present. According to Davis-McGowan, the children got into the van, after which C.A. got into the van. J.F. was outside the van loading equipment into the back of the van for an undetermined amount of time. J.F. then got in the van and C.A. then drove from the park. Shortly thereafter either C.A. asked J.F. to recount the children or J.F. informed C.A. that there were only seven children on the bus. It was undisputed, however, that H., a four-year-old child, was not on the bus. C.A. drove back to the park where J.F. looked for, but did not find, H. Meanwhile, C.A. had called her supervisor and learned that H. had been found by an unidentified person who took him to a nearby elementary school. C.A. and J.F. picked H. up at the school and rode in the van with all the children to the YMCA facility.

On cross-examination, counsel for C.A. asked Davis-McGowan whether it was possible that, after C.A. lined the children up and checked a list to be sure all eight were there, she got on the van before them and expected J.F. to "come up behind the children."[5] Davis-McGowan agreed that the events could have transpired that way, but that, regardless, H. was left at the park and

[5] C.A. did not testify at the hearing before the ALJ.

8

would not have been had C.A. recounted the children once they got on the bus. Counsel for C.A. asked if it was possible that H. "ran off" while the children were standing in line, as one of the other children had reported to an investigator, and suggested that J.F. was responsible for leaving H. behind at the park because he did not ensure that all eight children boarded the van. Davis-McGowan testified that even if that were the case, both C.A. and J.F. were caregivers equally responsible for the children and that H. would not have been left behind had C.A. ensured, before driving away, that all eight children were on the van. The Department argued that in failing to ensure H. was actually on the van before driving away, C.A. violated Minimum Standards that required that she maintain visual or auditory awareness and physical proximity to H., particularly given his young age. *See* 40 Tex. Admin. Code § 746.1205 (Tex. Dep't of Family & Protective Servs., What does Licensing mean by "supervise children at all times"?) (supervising children at all times includes responsibility for ongoing activity of each child, appropriate visual and/or auditory awareness, and physical proximity, taking into account age of child).

With respect to the finding that C.A. "failed to ensure that all children were accounted for before leaving the park because she did not recount the children after they were loaded onto the van," and the finding that H. "was left at the park for approximately 10 minutes without supervision," we conclude that these factual findings are supported by competent, substantial evidence. These findings logically support the ALJ's conclusion of law that C.A. was a designated perpetrator of "neglect" as that term is defined in the Department's rules, specifically section 745.5889. There was substantial evidence before the ALJ that C.A. was a caregiver charged with supervising H. and that she committed a "breach of duty" as that term is defined in the Department's

9

rule when, by leaving him alone at the park, she placed H. or failed to remove H. from a situation that a reasonable caregiver should realize requires judgment or actions beyond the child's level of maturity. *See* 40 Tex. Admin. Code § 745.8559(3). There was evidence that C.A. failed to maintain visual or auditory awareness of H. sufficient to ensure that he was on the van when she drove away, such as by conducting a pre-departure count of the children. There was also evidence that such measures would have ensured that H.'s absence would have been noticed and would have prevented him from being left at the park. Substantial evidence supports the legal conclusion that C.A. committed neglectful supervision of H. such that her name could be maintained in the Department's Central Registry. We sustain the Department's issue on appeal.

## CONCLUSION

Having sustained the Department's issue, we reverse the district court's judgment and render judgment affirming the order and decision of the ALJ and the Department. *See* Tex. Gov't Code § 2001.174.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Bourland

Reversed and Rendered

Filed: September 19, 2018

10