

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-21-00092-CV

_____

TEXAS HEALTH AND HUMAN SERVICES COMMISSION, APPELLANT

V.

ELLIOT DAVIS, APPELLEE

On Appeal from the 250th District Court
Travis County, Texas
Trial Court No. D-1-GN-20-001438; Honorable Maya Guerra Gamble, Presiding

February 23, 2022

## MEMORANDUM OPINION

Before PIRTLE and PARKER and DOSS, JJ.

This is an appeal by Appellant, Texas Health and Human Services Commission ("THHSC"), from the district court's order reversing a decision by the administrative law judge that upheld a finding that Appellee, Elliot Davis, abused a child in the context of his

position as a caregiver and counselor at a residential treatment center.[1] THHSC brings one issue via this appeal through which it argues the administrative law judge's finding that Davis abused the child was supported by substantial evidence such that his name should remain on the central registry.[2] As such, THHSC seeks the reversal of the district court's order that effectively removes his name from the registry. We will reverse the trial court and render judgment reinstating the administrative law judge's *Decision and Order.*

**BACKGROUND**

This matter arose from an incident between Davis and a child in June 2017. At that time, twenty-two-year-old Davis had worked as a youth care counselor and caregiver at the Burke Center in Driftwood, Texas, for ten days. The Burke Center is a residential treatment center for boys, aged eleven to seventeen, who present with mental, emotional, and behavioral problems. The child involved in the incident was fourteen years old, five feet ten inches tall, and weighed 175 pounds. He had an IQ of about 70 and had previously been neglected and suffered physical abuse. The child had a "long history of violent behavior" and had been "kicked out" of numerous facilities. He had been "in

---

[1] Originally appealed to the Third Court of Appeals, sitting in Austin, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001. Should a conflict exist between precedent of the Third Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

[2] The Texas Department of Family and Protective Services maintains the central registry. The central registry contains names of persons who have been found to have abused or neglected a child. THHSC is the agency responsible for checking the central registry as part of the background check process and for providing a person whose name is on the registry with the opportunity for a due process hearing. TEX. FAM. CODE ANN. § 261.002(a). If a person's name is maintained on the central registry, it may be disclosed to third parties such as when a childcare provider runs a required background check regarding employment at its establishment. *Tex. Dep't of Family & Protective Servs. v. Barlow*, No. 03-05-00469-CV, 2007 Tex. App. LEXIS 5087, at *3 (Tex. App.—Austin June 28, 2007, pet. denied) (mem. op.) (citing 40 TEX. ADMIN. CODE ANN. §§ 745.611, 745.615).

numerous fights with both staff members and residents. He had required physically restraining similar to what [Davis] initiated in this case on numerous occasions, at least ten to twenty that are documented[.]" Prior to the incident in question, Davis received training in "de[-]escalation techniques and in emergency behavioral intervention."[3] However, his practical experience was only in restraining children much smaller than the child involved in this incident.[4] In fact, Davis was himself similar in size to the child who was subjected to restraint in this matter.

The incident giving rise to this appeal occurred on a Sunday morning.[5] That day, the child became upset because another resident was permitted to use a bathroom in the older children's dormitory. The child went outside. One counselor confronted the child in an attempt to de-escalate the child's agitated state and the child asked him to give him some space. The counselor did so. Under the child's plan, he was to be supervised at all times when outside the building. Davis came outside, and another counselor joined them. Several younger children were also outside, about thirty to forty feet from the child at issue here.[6] The child refused redirection and refused to go inside. He was verbally abusive to both counselors and threw a small stick in Davis's direction. The stick flew

---

[3] Under the applicable minimum standards, a restraint should only be performed when there is immediate danger.

[4] Davis told an investigator that he "mostly works for the cougar dorm [consisting of the younger and smaller children]." He stated that "20% of the time he might be with the eagle dorm [consisting of the older and larger children]."

[5] The record contains a video of the incident. The video does not contain audio.

[6] The younger children are not visible in the video of the incident.

quite close to Davis.[7]  The director of the facility stated that the child "threw a stick at staff and was being aggressive and dangerous . . . this should not be happening period."  Davis asked the child if he just threw a stick at him.  The child responded, "Yeah, what the f*ck are you going to do about it?"  According to testimony, the child appeared to continue to search the ground, ostensibly for another object to throw.  The child's history indicated that when he began to act in this manner, he "typically reaches a point where he attempts to physically harm someone."  That fact was mentioned several times in the child's plan of service and apparently, staff members were provided with summary information concerning each child.

Davis looked at the child, then to the area where the other children were located, and then in the direction of another counselor just out of view of the video.  He nodded and then looked back at the child.[8]  The child looked at Davis, standing with his arms at his sides.  Davis approached the child and initiated a one-on-one physical confrontation in an attempt to physically restrain the child.[9]  Davis first attempted a "basket hold" but realized that type of restraint would not work because the child was very strong.  He then initiated another type of restraint in which he held the child's wrist and put his other hand

---

[7] Another counselor stated that "he could not tell if [the stick] struck" Davis but "did seem to be close."  Davis told an investigator that "the stick was extremely close to him and landed next to him after hitting his shoulder."  He said he felt "threatened because [the child] has threatened him in the past."

[8] Another counselor said that at that time, Davis "is de-escalating."

[9] The program director told an investigator that there are three types of restraints that the facility uses.  Team control "is done by one person on each side." Each person holds an arm above the wrist and uses the other hand to hold the shoulder down. The second is the "Child Control Position" in which the child's arms "are crossed over the chest and the staff is holding the child's opposites [sic] arms by the waist level."  The child is held so as to lean on the staff and the staff are advised to keep their head close to the child to avoid "head butting."  The third is a transport position that is used as a less restrictive hold.  The staff hold the child under the arm and by the wrist.

on the child's shoulder. The record shows that the Burke Center had a "rule of thumb" that two people should restrain this particular child because he was strong. The second counselor was about ten to fifteen feet away when Davis initiated the altercation but joined Davis a few seconds later. That counselor performed a similar restraint to that being utilized by Davis, holding the other arm and shoulder. The child resisted and struggled and during that time, the child and the counselors came down to the ground. The counselor who first initiated contact with the child returned and supervised the restraint as required under the rules. He then joined in the attempt to restrain the child because the child resisted the attempts by the first two counselors and those counselors lost control of the child. After a struggle, the three counselors eventually successfully restrained the child, and the child suffered no injury. Two staff members, including Davis, were injured during the incident.[10]

Following the incident, Davis told an investigator that as the new person, he had to show that he was able to handle the children. He could not let the child bully him. Davis said the child was testing him and he had to show the child that he needed to respect him. Davis said he "engaged into the restraint because he felt threatened" because the child had "threatened him in the past." He first attempted a "basket hold" but then realized how strong the child was and knew that restraint would not be effective. Davis told the investigator he felt the restraint was necessary under the circumstances with this child. The program director agreed that the restraint was necessary because

_____

[10] The child was later arrested for assault.

5

the child had thrown a stick. This was assaultive behavior, particularly coupled with this child's history. He characterized throwing the stick as "a danger to himself or others."

The Texas Department of Family and Protective Services ("the Department") regulates facilities that provide childcare services. When the Department receives an allegation of abuse or neglect of children, it conducts an investigation. The Department conducted such an investigation in this case. At the conclusion of its investigation, it found Davis's "actions did constitute abuse and/or neglect." The Department found that Davis "participated in a lengthy, unnecessary, improper, and/or prohibited restraint" of the child. It further found that Davis "unequivocally violated applicable minimum standards regarding discipline, punishment, and emergency behavior intervention." The Department determined that the "improper or prohibited restraint methods could easily have caused physical injury to or death of [the child]." Davis appealed the Department's finding, and a hearing was held before an administrative law judge. Following the hearing, the administrative law judge issued a lengthy *Decision and Order* by which it found the evidence presented by THHSC was sufficient to support the Department's finding that Davis abused the child. Therefore, it found that Davis's name shall be maintained on the central registry in reference to the finding.[11]

Davis appealed the administrative law judge's *Decision and Order* to the district court. A hearing was held in that court after which the judge issued an *Order Granting Plaintiff's Petition for Judicial Review.* Through that order, the district judge reversed the

---

[11] Davis continued to work at the Burke Center for six months following this incident. He left the facility to pursue an employment opportunity in the construction field. His departure from the facility was not related to this incident.

*Decision and Order* issued by the administrative law judge and ordered that Davis's name be removed from the central registry maintained by the Department. THHSC now appeals that decision, arguing the administrative law judge's finding that Davis abused the child was supported by substantial evidence and thus, Davis's name should remain on the central registry maintained by the Department.

**ANALYSIS**

**APPLICABLE LAW**

Whether the Department's finding and the administrative law judge's *Order and Decision* was supported by substantial evidence is a question of law. *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 562 (Tex. 2000). Therefore, the district court's judgment is not entitled to deference on appeal. *Tex. Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (per curiam). On appeal of that judgment, we consider the same question presented to the district court—whether the order was supported by substantial evidence. *Montgomery Indep. Sch. Dist.*, 34 S.W.3d at 562.

When reviewing an agency decision under the "substantial evidence" standard, a court "may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion . . . ." TEX. GOV'T CODE ANN. § 2001.174. Whether the agency's order satisfies the substantial evidence standard is a question of law. *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984). Substantial evidence review is, in essence, "a rational-basis test to determine, as a matter of law, whether an agency's order finds reasonable support in the record." *Jenkins v. Crosby Indep. Sch. Dist.*, 537 S.W.3d 142, 149 (Tex. App.—Austin

7

2017, no pet.). To meet the substantial evidence standard, one must show "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' of fact." *Lauderdale v. Tex. Dep't of Agric.*, 923 S.W.2d 834, 836 (Tex. App.—Austin 1996, no writ) (citation omitted). We presume that the order is supported by substantial evidence. *Id.*

Substantial evidence analysis is comprised of two inquiries: (1) whether the agency made findings of underlying facts that logically support the ultimate facts and legal conclusions establishing the legal authority for the agency's decision or action and, in turn, (2) whether the findings of underlying fact are reasonably supported by the evidence presented. *See Vista Med. Ctr. Hosp. v. Tex. Mut. Ins. Co.*, 416 S.W.3d 11, 26-27 (Tex. App.—Austin 2013, no pet.). The second inquiry, or the "crux" of the substantial evidence review, is highly deferential to the agency's determination. *Employees Ret. Sys. of Tex. v. Garcia*, 454 S.W.3d 121, 132 (Tex. App.—Austin 2014, pet. denied). "[S]ubstantial evidence" as used in this context "does not mean a large or considerable amount of evidence." *Id.* Rather, the evidence may even preponderate against the agency's finding, requiring only "such relevant evidence as a reasonable mind might accept as adequate to support a [finding] of fact." *Id.* (citing *Slay v. Tex. Comm'n on Env't Quality*, 351 S.W.3d 532, 549 (Tex. App.—Austin 2011, pet. denied)). The finder of fact determines the credibility of the witnesses and the weight to be given to their testimony, *see Granek v. Tex. State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 778 (Tex. App.—Austin 2005, no pet.), and we "may not substitute [our] judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion[.]" TEX. GOV'T CODE

8

ANN. § 2001.174(1).[12]  In contrast, the first inquiry, concerning the extent to which the underlying facts found by the agency logically support its ultimate decision or action, may entail questions of law that we review *de novo*.  *Garcia*, 454 S.W.3d at 133.  S*ee R.R. Comm'n of Tex. v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011).

---

[12] This provision reads as follows:

If the law authorizes review of a decision in a contested case under the substantial evidence rule or if the law does not define the scope of judicial review, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion but:

(1) may affirm the agency decision in whole or in part; and

(2) shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

    (A) in violation of a constitutional or statutory provision;

    (B) in excess of the agency's statutory authority;

    (C) made through unlawful procedure;

    (D) affected by other error of law;

    (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

    (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

TEX. GOV'T CODE ANN. § 2001.174.

## APPLICATION OF LAW TO FACTS

### ISSUE—IS THE ADMINISTRATIVE LAW JUDGE'S FINDING THAT DAVIS ABUSED THE CHILD SUPPORTED BY SUBSTANTIAL EVIDENCE SUCH THAT HIS NAME SHOULD REMAIN ON THE CENTRAL REGISTRY?

THHSC argues that the administrative law judge's finding that Davis abused the child is supported by substantial evidence and accordingly, his name should remain on the central registry. Davis contends the administrative law judge erred in holding that THHSC established, by a preponderance of the evidence, that he abused the child because substantial evidence did not support that finding. Consequently, Davis argues his name should be removed from the central registry as per the district court's *Order Granting Plaintiff's Petition for Judicial Review.*

At issue here is whether the administrative law judge's finding that Davis abused the child during the June 2017 incident was supported by substantial evidence.

The definition of "abuse" applicable at the time of the incident provided that "abuse" means:

> an intentional, knowing, or reckless act or omission by an employee, volunteer, or other individual working under the auspices of a facility or program that causes or may cause emotional harm or physical injury to, or the death of, a child served by the facility or program as further described by rule or policy.

TEX. FAM. CODE ANN. § 261.401(a)(1), Act of May 31, 2017, 85th Leg. R.S., ch. 261, § 261.401(a), sec. 32, 2017 Tex. Gen. Laws 713, 735 (repealed 2017). The Department further stated that an act or omission is "intentional, knowing, or reckless" if the person committing it:

10

(1) deliberately causes or might cause physical injury or emotional harm to the child;

(2) knows or should know that physical injury or emotional harm to the child is a likely result of the act or omission; or

(3) consciously disregards an unjustifiable risk of physical injury or emotional harm to the child.

40 TEX. ADMIN. CODE ANN. §745.8555(b).

Physical injury was defined as "[a]ny bodily harm, including minor scrapes, cuts, and bruises. This includes any bodily harm resulting from the discipline of a child and any 'substantial physical injury.'" 40 TEX. ADMIN. CODE ANN. § 745.8555(d).

An emergency behavior intervention, such as the restraint used by Davis on the child, is to be used only under emergency circumstances. Before using an emergency behavior intervention, the caregiver must: (1) attempt less restrictive behavior interventions that prove to be ineffective, and (2) determine that the situation is an emergency. 26 TEX. ADMIN. CODE ANN. § 748.43(21).

An emergency situation is a situation in which attempted preventative de-escalatory or redirection techniques have not effectively reduced the potential for injury, so that intervention is immediately necessary to prevent:

(A) imminent probable death or substantial bodily harm to the child because the child attempts or continually threatens to commit suicide or substantial bodily harm;

or

(B) imminent physical harm to another because of the child's overt acts, including attempting to harm others. These situations may include

11

aggressive acts by the child, including serious incidents of shoving or grabbing others over their objections. These situations do not include verbal threats or verbal attacks.

26 TEX. ADMIN. CODE ANN. § 748.43(21).

THHSC argues that the administrative law judge was correct in finding that there was no emergency present here. It contends substantial evidence in the record shows the lack of emergency circumstances. The child threw a small stick at Davis. It was not thrown hard, did not appear to hit Davis, and fell to his side. While the child's verbal response included profanity when Davis asked if he threw a stick, the child did not engage in any other behavior that could have been seen as aggressive. At the time Davis initiated the restraint, the child was "standing still with his arms at his sides." Additionally, the administrative law judge determined that Davis's assertion that the child was looking for something else to throw was not credible. THHSC agrees and says none of these circumstances constitute an emergency.

Further, THHSC contends the administrative law judge was correct in determining that Davis's actions constituted abuse. The administrative law judge determined that the preponderance of the evidence supported a finding of abuse because Davis knew or should have known that physical injury to the child was a likely result of the restraint he used. Davis knew the child was approximately the same size that he was and was difficult to restrain. Davis knew the child was strong and he was aware that his own experience in restraining children was only on those much smaller than this child. He also knew or should have known that the child presented "a particularly difficult challenge" because there was a "rule of thumb" to have at least two staff members restrain the child. The

administrative law judge also found that the second counselor's proximity did not change the situation as he was too far away when Davis initiated the restraint. As such, Davis's actions constituted abuse under the applicable law. THHSC further argues on appeal that this is the correct outcome in this case, not what the district court determined in its judicial review.

Davis argues, however, that the administrative law judge incorrectly interpreted the statutory definition of "abuse." It is undisputed that the child did not suffer any emotional harm or physical injury from this incident. Accordingly, the issue was whether Davis performed an intentional, knowing, or reckless act that "may cause emotional harm or physical injury" to the child. Davis argues that at the time of the incident, the definition of abuse as cited above had been repealed in the 2017 legislative session, but that repeal was not effective until September 1, 2017. He argues that the definition of abuse that was applicable less than three months after this incident is instructive and should have influenced the administrative law judge's interpretation in the matter now before us.

The definition applicable as of September 1, 2017, provides that (1) "Abuse" includes the following acts or omissions by a person:

(A)     mental or emotional injury to a child that results in an observable and material impairment in the child's growth, development, or psychological functioning;

(B)     causing or permitting the child to be in a situation in which the child sustains a mental or emotional injury that results in an observable and material impairment in the child's growth, development, or psychological functioning;

(C)     physical injury that results in substantial harm to the child, or the genuine threat of substantial harm from physical injury to the child,

> including an injury that is at variance with the history or explanation given and excluding an accident or reasonable discipline by a parent, guardian, or managing or possessory conservator that does not expose the child to a substantial risk of harm . . . .

TEX. FAM. CODE ANN. § 261.001(1)(A), (B), (C).

Davis argues that the amended definition of abuse required physical injury that results in substantial harm to the child or the genuine threat of substantial harm from physical injury to the child. He contends that an interpretation of the term "abuse" as applicable to this case was one that required an inference that the Legislature always intended that, to constitute abuse, an act required more than the threat of a minor physical injury. As such, an act that "may cause" only a minor and insubstantial injury does not meet the statutory definition of "abuse." He asserts that the amended definition clarified, but did not change, the previous definition of abuse, because the Legislature could not have intended actions having only the potential to cause minor or insubstantial harm to be "abuse." Such an interpretation would "lead to absurd and unjust results" because under that view, no staff member of a facility such as Burke Center would initiate or perform a physical restraint on any resident because any physical restraint would constitute knowing abuse.

We are certainly sympathetic to Davis's position and argument concerning the effect the amended definition of "abuse" might have on the present matter. However, given the state of the law applicable at the time, we cannot adopt his reasoning or agree with his conclusion. *See Hegar v. Am. Multi-Cinema, Inc.*, 605 S.W.3d 35, 44 (Tex. 2020) (citation omitted) (court is "constrained to construe the statute as it existed" at the time of the incident at issue). The administrative law judge found Davis knew or should have

14

known that physical injury to the child was a likely result of initiating a one-on-one physical confrontation with the child. The record supports this finding as it shows Davis knew or should have known from his training that physical restraints can pose a risk of injury and death and thus, such restraints are to be used as a last resort in emergency circumstances only. The video and supporting testimony show Davis did not attempt to de-escalate the situation before utilizing physical restraint on the child. An employee of the Department testified she believed the child could have suffered emotional or physical injuries from the restraint Davis used. The facts in this case therefore fit within the definition of "abuse" applicable at the time the incident occurred. The facts that the child escaped injury and indeed, inflicted injury on staff members, and that the definition was amended a short time later is irrelevant. The record contains substantial evidence that Davis committed abuse of the child as it was defined at the time the restraint occurred.

We also find that substantial evidence exists in the record to support the administrative law judge's finding that there was no emergency such that Davis's restraint of the child was even necessary. An emergency situation is one in which de-escalatory or redirection techniques have not effectively reduced the potential for injury such that intervention is immediately necessary to prevent imminent physical harm to another because of the child's overt acts, including attempting to harm others. Those acts may include aggressive acts by the child, such as serious incidents of shoving or grabbing others over their objection, but do not include verbal threats or attacks. As noted here, the record contains evidence indicating the child was in an agitated state, threw a small stick in Davis's direction, allegedly appeared to be looking for other objects to throw, and responded to Davis with profanity. However, the child did not engage in any other

15

aggressive conduct and at the time of the intervention, was standing with his arms at his sides. An employee of the Department testified she did not believe the child was a danger to others at the time the restraint was utilized. Based on the statutory definitions applicable at the time, none of the child's acts constituted aggressive acts to such a degree that immediate intervention was necessary to prevent harm to others and nothing suggests an emergency existed at that time. Accordingly, we find substantial evidence supported the administrative law judge's findings of fact and conclusions of law. We sustain THHSC's issue.

### CONCLUSION

Having sustained THHSC's issue, we reverse the district court's *Order Granting Plaintiff's Petition for Judicial Review* and render judgment reinstating the administrative law judge's *Decision and Order*.

Patrick A. Pirtle
Justice

16